[No. B139266. Second Dist., Div. Seven. Feb. 27, 2001.]

THE PEOPLE, Plaintiff and Respondent, v.
LEO CLEVELAND, Defendant and Appellant.

COUNSEL

Stephen Temko, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Carol Wendelin Pollock, Assistant Attorney General, Victoria Bedrossian and Darryl C. Hottinger, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**WOODS, J.**—In *Apprendi v. New Jersey* (2000) 530 U.S. 466 [120 S.Ct. 2348, 147 L.Ed.2d 435], the Supreme Court held that any fact that increases the penalty for a crime beyond the prescribed statutory maximum for the crime must be submitted to a jury and proved beyond a reasonable doubt. In view of *Apprendi,* Leo Cleveland contends the issue of whether under Penal Code section 654[1] a defendant has a separate "intent and objective" for multiple offenses occurring during a course of criminal conduct, is a factual

---

[1]Penal Code section 654 provides, in pertinent part: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision. . . ." (§ 654.)

question for a jury to determine under the "reasonable doubt" standard. Consequently, Cleveland asserts his consecutive sentences for attempted murder and robbery must be vacated because the trial court, rather than the jury, made the relevant section 654 factual determinations and because the trial court applied a standard of proof less stringent than "reasonable doubt." In addition, Cleveland claims the court erred in failing to "stay" his robbery sentence under section 654.

Cleveland's contentions lack merit. In our view, section 654 does not run afoul of the rule announced in *Apprendi*. The question of whether section 654 operates to "stay" a particular sentence does not involve the determination of any fact that could increase the penalty for a crime beyond the prescribed statutory maximum for the underlying crime. In any event, had the section 654 "intent and objective" determination been sent to the jury, we conclude it would have reached the same conclusion. The jury, as did the court, would have refused to stay Cleveland's robbery sentence. Accordingly, we affirm.

### FACTUAL AND PROCEDURAL HISTORY

Cleveland slept in the crawl space behind the apartment building where 66-year-old John Freeman lived.

Freeman, who was feeble and had difficulty walking, on one occasion gave Cleveland some money and asked him to go to the store to buy Freeman a pack of cigarettes. When Cleveland returned with the change, Freeman allowed him to keep it. Cleveland, however, wanted more money, and became angry when Freeman declined to give him any.

On the evening of August 23, 1998, Cleveland knocked on the apartment door of Freeman's neighbors, Axle and Oscar Cardenas. Cleveland asked Axle Cardenas for a loan or some money. When Cardenas refused him, Cleveland left. A short time later, Cleveland returned with a package of steaks and asked if Cardenas wanted to buy them. Cardenas declined the offer. Cleveland appeared unhappy, but nonetheless left. Cleveland went next door to Freeman's apartment and asked Freeman if he wanted to buy the steaks. Freeman also declined.

A few minutes later, Axle Cardenas saw Cleveland attempting to remove Freeman's walker from Freeman's apartment. Cardenas confronted Cleveland and Cleveland became angry, but left the walker and appeared to leave the premises.

---

All statutory references are to the Penal Code unless otherwise indicated.

About an hour later, Cleveland entered Freeman's apartment and began beating him with a two-by-four piece of wood. Freeman did not hear the intruder because he was wearing headphones and listening to a portable "walk-man" radio. Cleveland continued to beat Freeman on the head and legs until the board broke and Freeman lost consciousness. Hearing the commotion, Axle Cardenas went next door and saw Cleveland beating Freeman. Cardenas also saw Cleveland leave the apartment, carrying Freeman's Walkman radio.

Cleveland was arrested and charged with attempted murder, robbery and assault with a deadly weapon. In addition to various weapons enhancements, Cleveland was also charged with having suffered three prior "strike" convictions.

The jury found Cleveland guilty on all three counts. After waiving his right to a jury trial on the prior conviction allegations, the court found two of the three prior strike allegations to be true. The court sentenced Cleveland to a total of 54 years to life in state prison, consisting of 29 years to life on the attempted murder conviction and a consecutive sentence of 25 years to life on the robbery count. Over Cleveland's objection, the court refused to "stay" his robbery sentence under section 654, but did "stay" his sentence on the assault with a deadly weapon conviction.

Cleveland appeals.

## DISCUSSION

*The Trial Court Did Not Err in Imposing Separate Consecutive Sentences on Cleveland's Attempted Murder and Robbery Convictions Under Section 654.*

■ Section 654 precludes multiple punishment for a single act or indivisible course of conduct punishable under more than one criminal statute. Whether a course of conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the "intent and objective" of the actor. (*Neal v. State of California* (1960) 55 Cal.2d 11, 19 [9 Cal.Rptr. 607, 357 P.2d 839].) If all of the offenses are incident to one objective, the court may punish the defendant for any one of the offenses, but not more than one. (*People v. Perez* (1979) 23 Cal.3d 545, 551 [153 Cal.Rptr. 40, 591 P.2d 63].) If, however, the defendant had multiple or simultaneous objectives, independent of and not merely incidental to each other, the defendant may be punished for each violation committed in pursuit of each objective even though the violations share common acts or were

parts of an otherwise indivisible course of conduct. (*People v. Beamon* (1973) 8 Cal.3d 625, 639 [105 Cal.Rptr. 681, 504 P.2d 905].)

As a general rule, the sentencing court determines the defendant's "intent and objective" under section 654. (See, e.g., *People v. Coleman* (1989) 48 Cal.3d 112, 162 [255 Cal.Rptr. 813, 768 P.2d 32].) "In sentencing pursuant to Penal Code section 654, the trial court retains discretion to impose punishment for the offense that it determines, under the facts of the case, constituted the defendant's 'primary objective' " keeping in mind the overall purpose of section 654. (*People v. Norrell* (1996) 13 Cal.4th 1, 6 [51 Cal.Rptr.2d 429, 913 P.2d 458].) "[T]he protection against multiple punishment is to insure that the defendant's punishment will be commensurate with his criminal liability." (*Neal v. State of California, supra*, 55 Cal.2d at p. 20.) With these principles in mind, we turn to Cleveland's arguments.

On appeal, Cleveland asserts: (1) the court's application of section 654 violated the rule announced in *Apprendi*;[2] and (2) the court should have "stayed" his robbery sentence under section 654 because he robbed and attempted to murder Freeman during an indivisible course of conduct pursuant to one objective—to rob Freeman. We disagree with each of these contentions, and as set forth below, find the court properly sentenced Cleveland.

### A. *Apprendi Claim.*

*Apprendi v. New Jersey*, 530 U.S. 466, is one in a series of recent cases in which the United States Supreme Court has expressed concern that a judge's use of the preponderance of the evidence standard to determine various "sentencing factors" may infringe upon an accused's constitutional due process rights.[3]

*Apprendi* involved two New Jersey criminal statutes working in tandem. The first statute punished the possession of a firearm for an unlawful

---

[2]We do not agree with the Attorney General's assertion Cleveland "waived" his *Apprendi* claim by failing to raise it below. In general, claims of error concerning section 654 are subject to review even in absence of a failure to object. (*People v. Hester* (2000) 22 Cal.4th 290, 295 [92 Cal.Rptr.2d 641, 992 P.2d 569].) In addition, we observe *Apprendi* was not decided until after Cleveland was sentenced. Thus, Cleveland cannot be said to have "waived" his constitutional claim. Instead his claim is subject to review under the "plain error" standard. (*United States v. Olano* (1993) 507 U.S. 725, 732 [113 S.Ct. 1770, 1776-1777, 123 L.Ed.2d 508].) To secure reversal under this standard, Cleveland must prove that: (1) there was "error"; (2) the error was "plain"; and (3) that the error affected "substantial rights." (*Ibid.*) This analysis necessitates we reach the merits of Cleveland's *Apprendi* claim.

[3]In *McMillan v. Pennsylvania* (1986) 477 U.S. 79 [106 S.Ct. 2411, 91 L.Ed.2d 67], the Supreme Court coined the phrase "sentencing factor" to distinguish between "elements" of a crime which must be determined by a jury and factual matters affecting sentencing that the trial judge decides. In *Almendarez-Torres v. United States* (1998) 523 U.S. 224 [118 S.Ct.

purpose by imprisonment for between five and 10 years. The second statute, know as a "hate crime" law, was a sentence "enhancement" which increased the range to between 10 and 20 years if the court found by a preponderance of the evidence, the defendant " 'acted with a purpose to intimidate an individual or group of individuals because of race, color, gender, handicap, religion, sexual orientation or ethnicity.' " (*Apprendi v. New Jersey, supra,* 530 U.S. at pp. 468-469 [120 S.Ct. at p. 2351].) Apprendi, who had shot a rifle into the home of an African-American family, was charged in an indictment that made no reference to New Jersey's hate crime statute. Among other offenses, he pled guilty to possession of a firearm for an unlawful purpose. After the trial court accepted the plea, the prosecutor filed a motion to enhance the sentence pursuant to the hate crime statute. The trial court conducted an evidentiary hearing and concluded by a preponderance of the evidence that the crime was motivated by racial bias. The judge consequently applied the hate crime enhancement and sentenced Apprendi to 12 years in prison on the firearm charge. The New Jersey Supreme Court upheld his sentence. (*Id.* at pp. 469-473 [120 S.Ct. at pp. 2352-2354].)

The United States Supreme Court granted certiorari and reversed, holding that the procedure used by the New Jersey courts violated the due process clause of the Fourteenth Amendment. (*Id.* at p. 476 [120 S.Ct. at p. 2355].) After reviewing the historical importance of trial by jury and the requirement of proof beyond a reasonable doubt, the court concluded that "[t]he historic link between verdict and judgment and the consistent limitation on judges' discretion to operate within the limits of the legal penalties provided highlight the novelty of the legislative scheme that removes the jury from the determination of a fact that, if found, exposes the criminal defendant to a penalty exceeding the maximum he would receive if punished according to the facts reflected in the jury verdict alone." (*Id.* at pp. 482-483 [120 S.Ct. at p. 2359], italics omitted.) From this principle, the court articulated a new constitutional rule: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum [for the particular crime] must be submitted to a jury, and proved beyond a reasonable doubt."[4] (*Id.* at p. 490 [120 S.Ct. at pp. 2362-2363].)

Here, Cleveland claims the trial court's determination under section 654 that he had separate objectives with respect to the robbery and attempted

---

1219, 140 L.Ed.2d 350], the court determined that an allegation in a sentencing enhancement that the defendant suffered a prior felony conviction did not constitute an "element" of a crime, and thus did not have to be submitted to a jury. Last year, the Supreme Court in *Jones v. United States* (1999) 526 U.S. 227 [119 S.Ct. 1215, 143 L.Ed.2d 311], foreshadowed *Apprendi*. The *Jones* court suggested that under the Sixth Amendment right to jury trial, any factor other than a prior conviction, that could increase the maximum penalty must be tried to a jury, unless jury trial is waived.

[4]In announcing the *Apprendi* rule, the court limited the holding in *McMillan v. Pennsylvania, supra,* 477 U.S. 79. *McMillan* upheld a statute requiring the sentencing judge to impose

murder, violates the *Apprendi* rule. After *Apprendi,* Cleveland asserts, a jury, rather than the trial court, must determine the "intent and objective" of the defendant under the standard of "beyond a reasonable doubt." We do not agree.

Unlike in the "hate crime" provision in *Apprendi,* section 654 is not a sentencing "enhancement." On the contrary, it is a sentencing "reduction" statute. Section 654 is not a mandate of constitutional law. Instead, it is a discretionary benefit provided by the Legislature to apply in those limited situations where one's culpability is less than the statutory penalty for one's crimes. Thus, when section 654 is found to apply, it effectively "reduces" the total sentence otherwise authorized by the jury's verdict. The rule of *Apprendi,* however, only applies where the nonjury factual determination *increases* the maximum penalty beyond the statutory range authorized by the jury's verdict. In *Apprendi,* the factual determination (i.e., the element of intent for the hate crime) which increased his sentence was not determined by the trier of fact under the reasonable doubt standard. Here, however, every factual element of the attempted murder and robbery was submitted to the jury, and the jury found Cleveland guilty beyond a reasonable doubt of both crimes. Thus, the jury's verdict authorized the sentences Cleveland received for each crime. Indeed, in finding section 654 did not apply, Cleveland received the *same* sentence as he was exposed to by the jury's verdict. Where, as here, the nonjury factual determination allows for a sentence within the range already authorized by the verdict, *Apprendi* has no effect.

Cleveland also argues that the rationale of *Apprendi* applies to the determination of "intent and objective" because section 654 sets the "maximum penalty" for his conduct. He asserts, the "maximum penalty" under section 654 is punishment under a *one* statutory provision, not more than one. Cleveland claims that to determine whether the defendant should receive a sentence greater than the maximum penalty under section 654 (i.e., whether he should be sentenced under more than one provision), the trier of fact must make a factual determination of the defendant's "intent and objective." Thus, under *Apprendi,* argues Cleveland, the jury rather than the court must make the appropriate factual determination of "intent and objective." This argument fails. Section 654 does not contain the "maximum penalty" for any

a minimum sentence, within the statutory range applicable to the crime, if the judge found by a preponderance of the evidence the defendant visibly possessed a firearm during the commission of an offense. (*Id.* at pp. 81-93 [106 S.Ct. at pp. 2413-2420].) As *Apprendi* stated: "We do not overrule *McMillian.* We limit its holding to cases that do not involve the imposition of a sentence more severe than the statutory maximum for the offense established by the jury's verdict . . . ." (*Apprendi v. New Jersey, supra,* 530 U.S. at p. 487, fn. 13 [120 S.Ct. at p. 2361].)

particular crime. The "maximum penalty" discussed in *Apprendi* pertains to the specific offenses at issue; *Apprendi* is relevant only where a judge-made factual determination increases the maximum statutory penalty for the particular crime or crimes. Here, Cleveland was convicted of both robbery and attempted murder. Because of Cleveland's prior convictions, *each* of those offenses, carried a maximum statutory penalty of life in prison. Thus, Cleveland's sentence of 54 years to life does not exceed the statutory maximum for either of the individual offenses.

Finally, we reject Cleveland's contention that "when a trial court determines a defendant harbored separate intents," the court creates a "separate offense" with separate punishment. The court's finding under section 654 does not create a "new" offense. Instead, it gives effect to the jury's verdicts on offenses for which the defendant has been fully tried and convicted.

This analysis notwithstanding, any alleged error was harmless error beyond a reasonable doubt. (*People v. Marshall* (2000) 83 Cal.App.4th 186, 195 [99 Cal.Rptr.2d 441], review granted Nov. 29, 2000 (S091666) [*Apprendi* errors reviewed under the *Chapman v. California* (1967) 386 U.S. 18 [87 S.Ct. 824, 17 L.Ed.2d 705, 24 A.L.R.3d 1065] harmless error standard].) As set forth below, we conclude the court properly found Cleveland had divisible intents under section 654 for the robbery and attempted murder. We have no doubt a jury would have reached the same conclusion under the reasonable doubt standard.

## B. *Application of Section 654.*

We review the court's determination of Cleveland's "separate intents" for sufficient evidence in a light most favorable to the judgment, and presume in support of the court's conclusion the existence of every fact the trier of fact could reasonably deduce from the evidence. (*People v. Green* (1996) 50 Cal.App.4th 1076, 1085 [58 Cal.Rptr.2d 259].)

Sufficient evidence existed for the court to conclude Cleveland harbored divisible intents in committing two separate crimes—robbery and attempted murder of Freeman.[5] We do not agree with Cleveland that both crimes were committed pursuant to the intent to rob Freeman of his Walkman. As the trial court observed, the amount of force used in taking the

---

[5]The fact that this case involved two distinct offenses distinguishes it from *People v. Logan* (1953) 41 Cal.2d 279 [260 P.2d 20], the case upon which Cleveland relies. Here, Cleveland is not challenging the jury's conclusion that he committed two separate crimes; instead he claims that he should not be punished separately for them under section 654. In *Logan*, however, the defendant asserted that although he was charged and convicted of both the robbery and the assault, the evidence supported a conviction for only one crime—the robbery. Thus, *Logan* does not involve the application of section 654.

Walkman was far more than necessary to achieve one objective. Cleveland repeatedly hit his 66-year-old feeble, unresisting victim on the head and body with a two-by-four board. Cleveland struck Freeman until the board broke and left him unconscious. While it is true that attempted murder can, under some circumstances, constitute the "force" necessary to commit a robbery, here, it was not the necessary force. As the court in *People v. Nguyen* (1988) 204 Cal.App.3d 181, 191 [251 Cal.Rptr. 40], observed: "at some point the means to achieve an objective may become so extreme they can no longer be termed 'incidental' and must be considered to express a different and more sinister goal than mere successful commission of the original crime. . . . [¶] . . . [¶] . . . [S]ection [654] cannot, and should not, be stretched to cover gratuitous violence or other criminal acts far beyond those reasonably necessary to accomplish the original offense." Cleveland beat Freeman senseless, such that the attempted murder cannot be viewed as merely incidental to the robbery.

The finding Cleveland had separate and simultaneous intents is further bolstered by the evidence that Cleveland and Freeman had a history of negative interaction. Cleveland had been angered by Freeman's refusal to give him more money after Cleveland ran the errand to buy Freeman cigarettes. In addition, shortly before Cleveland attacked Freeman, Cleveland became upset when his attempt to steal Freeman's walker was foiled. It is this history which motivated the gratuitous violence supporting the finding of two simultaneous intents.

In view of the foregoing, the court did not err in failing to "stay" Cleveland's robbery sentence.

DISPOSITION

The judgment is affirmed.

Lillie, P. J., concurred.

**JOHNSON, J.,** Concurring and Dissenting.—I concur in the judgment, with the exception of the consecutive sentence which added 25 years to life to the already lengthy term of 29 years to life the court imposed.

In my view, the United States Supreme Court opinion in *Apprendi v. New Jersey*[1] and the rationale it embodies—requires the jury rather than the trial judge to determine whether a defendant committed these offenses with multiple objectives and thus was susceptible to consecutive sentences rather

---

[1]*Apprendi v. New Jersey* (2000) 530 U.S. 466 [120 S.Ct. 2348, 147 L.Ed.2d 435].

than concurrent sentences for this course of criminal conduct. Furthermore, while I might agree substantial evidence supported the trial judge's finding appellant entertained multiple objectives, I disagree the evidence on that issue was so overwhelming we can fairly conclude no reasonable juror *could* entertain a reasonable doubt on that score. Accordingly, it cannot be said a jury *necessarily* would have reached the same verdict on the multiple objectives element and thus I would reverse and instruct the trial court to modify the sentence by converting the 25 years to life sentence imposed on the robbery count from a consecutive to a concurrent sentence.

1.   *Apprendi requires a jury to determine whether a defendant entertained multiple intents and thus can be sentenced for two offenses arising from a single criminal act.*

With an unusual alignment of justices,[2] the United States Supreme Court recently declared the constitutional rights to trial by jury and proof beyond a reasonable doubt require reversal of enhancements based on factual determinations made by trial judges rather than jurors.[3] The majority struck down a New Jersey statute allowing a trial court to raise the maximum sentence it could impose for certain offenses if the judge—not the jury—found the defendant was motivated by racial bias when he committed the crime.[4] In doing so the nation's high court announced a broad principle. "[O]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."[5]

To underscore the breadth of its decision, the United States Supreme Court pointed out a legislature could not avoid the constitutional imperatives by labeling the factual determinations to be made as sentencing factors rather than elements of the offense. "[T]he relevant inquiry is not one of form, but of effect - does the required finding expose the defendant to a greater punishment than is authorized by the jury's guilty verdict?"[6]

*Apprendi* involved the question of who can make a factual finding about the defendant's state of mind at the time he committed the acts which injured the victim. In that case the question was whether the defendant's then state

---

[2]The majority opinion was supported by Justices Stevens, Souter, Ginsburg, Scalia and Thomas. (Scalia and Thomas both filed concurring opinions suggesting they supported a broader requirement for jury determinations of factual issues which might increase a defendant's term of imprisonment.)

[3]*Apprendi v. New Jersey, supra,* 530 U.S. 466, 120 S.Ct. 2348.

[4]*Apprendi v. New Jersey, supra,* 530 U.S. at pages 492-495 [120 S.Ct. at pages 2364-2365].

[5]*Apprendi v. New Jersey, supra,* 530 U.S. at page 490 [120 S.Ct. at pages 2362-2363].

[6]*Apprendi v. New Jersey, supra,* 530 U.S. at page 494 [120 S.Ct. at page 2365].

of mind was one of racial hatred toward that victim. If so, the trial court could add a 10-year enhancement, effectively doubling the defendant's term of imprisonment, for his criminal actions. The New Jersey statute allowed the judge to make that factual finding about the defendant's state of mind. The United States Supreme Court held this deprived defendant of his constitutional rights—the Sixth Amendment right to trial by jury and the Fifth Amendment due process right to proof beyond a reasonable doubt.[7]

The instant case likewise involves a factual finding about the defendant's state of mind at the time he committed the acts which injured the victim. In this case the question is whether the defendant's then state of mind embraced a single objective or more than one objective. If more than one, the trial court can impose consecutive sentences, in this instance adding a 25 years to life term and nearly doubling appellant's penalty for committing these criminal acts. And like the New Jersey law found unconstitutional in *Apprendi*, the California statute, Penal Code section 654, allocates this vital decision about the defendant's state of mind during the time he committed the criminal acts to the trial judge rather than the jury.

Both the New Jersey "hate crime" law and California's "consecutive sentencing" law dramatically increase a defendant's penalty based on a trial court's finding about his state of mind at the time he committed the criminal acts of which the jury convicted him. It would elevate "form over effect" to hold it is unconstitutional for a judge rather than jury to decide whether a New Jersey defendant was motivated by hate when he committed his criminal acts yet it is constitutional for a judge to decide whether a California defendant entertained multiple rather than a single objective when committing his criminal acts. In both instances, "the required finding expose[s] the defendant to a greater punishment than that authorized by the jury's guilty verdict."[8] The jury only found appellant guilty of the two offenses. It was the judge who made the "*required* finding" that allowed appellant to receive the "greater punishment" of a nearly double sentence— the finding appellant harbored multiple criminal objectives during this single course of criminal conduct. Accordingly, in my view, the Supreme Court's holding in *Apprendi* renders unconstitutional the consecutive sentencing of appellant in this case.

I should emphasize this view does not jeopardize those provisions in California's determinate sentencing laws which allow the judge—rather than a jury—to make findings about a defendant's character, his criminal record, the likelihood of recidivism, his potential for rehabilitation, or similar factors

---

[7]*Apprendi v. New Jersey, supra,* 530 U.S. at page 476 [120 S.Ct. at page 2355].
[8]*Apprendi v. New Jersey, supra,* 530 U.S. at page 494 [120 S.Ct. at page 2365].

and then to use those findings to enhance or mitigate the defendant's sentence. In making findings as to these factors the trial court does not usurp the function of the jury in deciding which criminal acts a defendant committed on a given occasion and with what state of mind he committed those acts. On the other hand, if, by committing these criminal acts with a certain state of mind a defendant is eligible for a greater punishment, then the jury rather than the judge should determine whether he had that state of mind at that time.

In this case it is apparent the "sentencing factor" the trial court used to nearly double appellant's punishment depended on a factual finding about the defendant's state of mind during the time he was committing the criminal acts that brought him before the jury. Consequently, it was for the jury to decide whether appellant entertained that state of mind. Once that was decided, the trial judge would be free to make any number of findings regarding appellant's character and related factors and use those in choosing among various sentencing options to set appellant's term of imprisonment. But a defendant's state of mind is part of the crime. To that extent, a jury, not a judge, must fix his time.

2. *Illinois authority supports the unconstitutionality of a judge rather than a jury determining appellant's multiple objectives during a single course of criminal conduct when that determination results in consecutive sentencing.*

While my research has not uncovered any California opinion addressing the constitutionality of this state's consecutive sentencing process after the Supreme Court opinion in *Apprendi,* Illinois appellate courts have filed a flurry of opinions on the issue in the past few months. All revolve around an Illinois statute very similar to Penal Code section 654. That statute is 730 Illinois Compiled Statutes section 5-8-4(a) and provides: "The court shall not impose a consecutive sentence for offenses which were committed as part of a single course of conduct during which there was no substantial change in the nature of the criminal objective, unless: [¶] . . . one of the offenses for which defendant was convicted was . . . Class X or Class 1 felony and the defendant inflicted severe bodily injury."

This Illinois statute, just as California's Penal Code Section 654, hinges the choice of consecutive versus concurrent sentencing on a factual finding or findings made by a trial judge rather than a jury. On September 29, 2000, in Chicago, Division Two of Illinois's First District Court of Appeal issued

its opinion in *People v. Clifton*,[9] invoking *Apprendi*, and holding 730 Illinois Compiled Statutes section 5-8-4(a) unconstitutional for this very reason. Over the next three months, Illinois appellate courts filed several opinions on the same issue, the majority agreeing with *Clifton*,[10] while at least one case found *Apprendi* inapplicable to the consecutive sentencing scheme established in section 5-8-4(a).[11] Because these Illinois decisions, and especially *Clifton*, consider most of the arguments the majority opinion raises in the case before this court I will discuss them at some length.

In *People v. Clifton,* the jury had convicted the defendant of first degree murder, attempted first degree murder, and aggravated battery with a firearm. The prosecution arose out of a gang shooting involving several victims. Pursuant to 730 Illinois Compiled Statutes section 5-8-4(a), the trial judge—not the jury—determined the crimes occurred in a single course of conduct and with a single motive. After recognizing these were class X and class 1 offenses the trial court then made a further finding the defendant inflicted "severe bodily injury" and on that basis imposed consecutive rather than concurrent sentences. While the case was on appeal, the United States Supreme Court filed *Apprendi* and the defendant filed a supplemental brief, claiming this opinion required reversal of the consecutive sentencing decision.

The *Clifton* court proceeded to frame and resolve the constitutional issue.

"We are thus presented with the novel question of whether the *Apprendi* regime applies to section 5-8-4(a). If the statute in question increased the penalty range or the maximum penalty for a particular crime, it would seem that the statute would unquestionably be within the scope of *Apprendi*. However, section 5-8-4(a), operates differently from the sort of extended sentencing statute found unconstitutional in *Apprendi*. Rather than increasing the range of sentence for a particular crime, it controls, inter alia, when a defendant who is being sentenced for multiple convictions resulting from the same course of conduct will serve those sentences concurrently and when he will serve those sentences consecutively.

"While there are formal distinctions between the types of statutes involved in *Apprendi* and in this case, we find it difficult to distinguish between a

---

[9]*People v. Clifton* (2000) 321 Ill.App.3d 707 [255 Ill.Dec. 769, 750 N.E.2d 686].

[10]*People v. Mason* (2000) 318 Ill.App.3d 314 [251 Ill.Dec. 910, 741 N.E.2d 1088]; *People v. Kizer* (2000) 318 Ill.App.3d 238 [251 Ill.Dec. 925, 741 N.E.2d 1103]; *People v. Harden* (2000) 318 Ill.App.3d 425 [251 Ill Dec. 885, 741 N.E.2d 1063]; *People v. Waldrup* (2000) 317 Ill.App.3d 288 [251 Ill.Dec. 241, 740 N.E.2d 71]; *People v. Carney* (2000) 317 Ill.App.3d 806 [251 Ill.Dec. 354, 740 N.E.2d 435].

[11]*People v. Primm* (2000) 319 Ill.App.3d 411 [253 Ill.Dec. 239, 745 N.E.2d 13].

statute enhancing an individual sentence from a statute requiring an extended period of incarceration, albeit through the stacking of two non-enhanced sentences. It would be anomalous to hold that where a statute mandates the enhancement of an individual sentence the enhancement factors must be tried by the jury while a statute requiring an extended period of service by requiring consecutive sentences would remain outside the purview of the *Apprendi* rationale. While section 5-8-4(a) does not affect the range of sentence for any particular crime, it does, obviously, have a great effect on the amount of time a given defendant will spend in the penitentiary. Normally, sentences are to be served concurrently when a defendant is sentenced for multiple crimes which were part of the same course of conduct . . . . [¶] However, if the court finds that the defendant inflicted severe bodily injury, the sentences will run consecutively. Thus, while section 5-8-4(a) does not enhance the sentence for any particular crime, it does extend the range of sentence to which a defendant may be exposed for a given course of conduct.

"If the court does not make a finding that the defendant inflicted severe bodily injury the maximum penalty to which the defendant is exposed for a given course of conduct is effectively the maximum penalty for the offense with the longest possible sentence because any other sentences will run concurrently. Thus the defendant would not be incarcerated for longer than that period. However, if the court finds that the defendant inflicted severe bodily injury the sentences run consecutively. Then the defendant could potentially be incarcerated for the aggregate of the maximum penalties for the two most serious felonies involved. . . . Thus, the practical effect of section 5/5-8-4(a) is that a factual finding of serious bodily injury by a judge will increase, even to the point of doubling, the actual and potential sentence which the defendant may receive for a given course of conduct.

"This is precisely the type of result which the supreme court meant its holding in *Apprendi* to encompass. In deciding to hold the New Jersey statute unconstitutional the court focused on the effect of the statute, not its form. . . . The court also explained the reasoning behind its holding, stating that if: [¶] 'a defendant faces punishment beyond that provided by statute when an offense is committed under certain circumstances but not others, it is obvious that both the loss of liberty and the stigma attaching to the offense are heightened; it necessarily follows that the defendant should not—at the moment the State is put to proof of those circumstances—be deprived of the protections that have, until that point, unquestionably attached.' *Apprendi*, 530 U.S. at 484, 120 S.Ct. at 2359, 147 L.Ed.2d at 451.

"Here, as we have shown, the penalties for Clifton's collective offenses were heightened when the judge made a finding of infliction of severe bodily

injury. The stigma and loss of liberty attached to a set of offenses wherein the defendant inflicted serious bodily harm are unquestionably greater than the stigma and loss of liberty attached to a set of offenses where no such bodily harm occurred. Consequently, we find that it would be unduly narrow and arbitrary to hold that *Apprendi* should not attach to the imposition of consecutive sentences requiring as a pre-condition such a factual determination in addition to those facts necessary to obtain a conviction for the crime charge.

". . . . If consecutive sentences are to be imposed pursuant to a factual finding that severe bodily injury occurred, then severe bodily injury will have to be submitted to a jury and proved beyond a reasonable doubt."[12]

The *Clifton* opinion supports all the positions urged earlier in this dissenting opinion and also responds directly to nearly every argument raised in the majority opinion in this case. Here, as in *Clifton*, appellant faces punishment beyond that provided by statute when offenses are committed under certain circumstances but not others and thus it necessarily follows that the defendant should not—at the moment the state is put to proof of those circumstances—be deprived of the right to jury trial of those circumstances. Here, as in *Clifton*, appellant's greater punishment does not exceed the combined maximum for the offenses of which the jury found appellant guilty but rather from a judge's finding about "certain circumstances" which elevated the defendant's punishment from a concurrent to a consecutive sentence.[13] Yet the *Clifton* court had no trouble concluding *Apprendi* is not limited to situations "where a judge-made factual determination increases the maximum statutory penalty for the *particular* crime or crimes."[14] Instead it held *Apprendi* applied as well where a judge made factual determinations about circumstances of a single course of criminal conduct which findings permitted or required consecutive sentencing for the "particular offenses" implicated in that course of conduct.

In *Clifton*, the "certain circumstances" the court held the jury must decide involved the "infliction of bodily injury," while in this case those circumstances consist of the number of "objectives" the appellant entertained during the commission of the offenses that were part of this "course of conduct." The "circumstances" may be of different types in the two cases, but the differences are irrelevant for this purpose. Indeed, if anything it is even clearer the defendant's state of mind while committing the criminal acts is a jury question than that the degree of injury to the victim must be decided by the jury.

---

[12]*People v. Clifton, supra,* 2000 WL 1459781 at pages *13-*15, footnote omitted.
[13]Majority opinion, *ante,* at pages 268-270.
[14]Majority opinion, *ante,* at page 271, italics added.

In a still more recent opinion, *People v. Waldrup*,[15] another Illinois appellate court specifically held *Apprendi* prohibits consecutive sentences where the judge rather than the jury determines whether there had been a "change in a defendant's criminal objective" during the time he was violating more than one criminal statute while engaging in a single course of conduct. This is the functional equivalent of the state of mind issue trial courts resolve under Penal Code section 654 in California—determining whether a defendant entertains a single or multiple objectives while managing to violate two or more criminal statutes during a single course of criminal conduct. Thus, the following words from the *Waldrup* opinion apply equally to the instant case.

"Based upon the reasoning in *Apprendi*, we conclude that the imposition of consecutive sentences is the same as a sentence enhancement, and, therefore, . . . any fact that is utilized to increase the amount of time a defendant must serve must be submitted to the trier of fact and proved beyond a reasonable doubt. Thus, the requirement of section 5-8-4(a) that the defendant be sentenced to consecutive sentences for the offenses listed therein if the defendant committed the offenses 'as part of a single course of conduct during which there was no substantial change in the nature of the criminal objective' is unconstitutional. . . . As a result, the defendant may not be subjected to imposition of consecutive sentences for his aggravated criminal sexual assault convictions."[16]

The *Waldrup* court ruled the jury rather than the judge must decide whether a defendant substantially changed the nature of his criminal objective during the single course of criminal conduct that produced his multiple convictions. Only with a jury verdict embracing this factual issue is a judge constitutionally permitted to impose consecutive sentences for those offenses. This ruling is equally persuasive when the consecutive sentencing option depends on a factual finding about whether the defendant entertained two or more objectives when he violated more than one criminal statute during a single course of criminal conduct. Both a "substantial change in criminal objective" and "entertaining multiple objectives" involve a defendant's state of mind while engaged in the course of criminal conduct. As such, for reasons explored in part 1 of this opinion as well as in *Waldrup* and the other Illinois decisions, the jury rather than judge must make the factual determination before a trial judge can impose a consecutive sentence.

---

[15]*People v. Waldrup, supra*, 740 N.E.2d 71.
[16]*People v. Waldrup, supra*, 740 N.E.2d at page 81, italics added.

3. *The statutory scheme established in Penal Code section 654 is properly characterized as a sentence enhancement scheme, but even if viewed as a sentence reduction scheme, it runs afoul of Apprendi.*

In the only argument not addressed in the Illinois cases quoted above, the majority opinion here also characterizes the trial judge's determination of the question whether a defendant entertained multiple rather than a single objective as a sentence "reduction" rather than a sentence "enhancement" decision.[17] Consequently, the majority argues, *Apprendi* does not apply to mandate a jury instead of a judge make the determination and to do so under a reasonable doubt standard. In my view, this characterization is neither accurate nor relevant.

First, it is easier—and more accurate—to characterize this decision as one effecting a sentence enhancement rather than a sentence reduction. When a jury convicts a defendant of two or more offenses occurring during a single course of conduct, Penal Code section 654 prohibits consecutive sentences unless the trial judge affirmatively finds the defendant entertained different objectives for the different offenses.[18] Then and only then is the judge authorized to *enhance* the term of the defendant's incarceration by punishing him consecutively for the several offenses of which the jury convicted him. For, under section 654: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but *in no case shall the act or omission be punished under more than one provision.*"[19]

Accordingly, the decision as to how many objectives a defendant harbors when committing a given criminal act is more accurately seen as determining whether appellant's sentence can be enhanced, not whether it can be reduced.

Yet even were Penal Code Section 654 accurately characterized as a sentence reduction scheme, *Apprendi* still would apply and require proof beyond a reasonable doubt before a jury of the defendant's multiple intents before a defendant could receive consecutive sentences. To understand why, imagine a murder statute which asked the jury only to decide whether a defendant was the cause of another person's death. Unbeknownst to the jury, the punishment for this crime is set at life imprisonment. Also unknown to the jury, however, the trial judge is allowed to find a given defendant did not premeditate the homicide and on that basis reduce the sentence to 25 years,

---

[17] Majority opinion, *ante*, at pages 268-269.
[18] Majority opinion, *ante*, at page 267.
[19] Penal Code section 654, subdivision (a), italics added.

or to find the defendant killed in a heat of passion and, if so to reduce the sentence to 15 years, or to find the defendant did not intend to kill the victim and reduce the punishment to five years. In doing so, the statutory scheme would convert elements of first degree murder, second degree murder, and voluntary and involuntary manslaughter to "sentence reduction factors" and transfer the factual determination whether these elements exist from jury to judge.

Would such a statutory scheme run afoul of the constitutional guarantees of due process and trial by jury as explained in *Apprendi*? I submit it would. It would fail because it imposed higher penalties for different states of mind without granting a jury trial on the issue of which state of mind the defendant possessed when he committed the criminal act. The fact the jury had been permitted to decide the issues of the defendant's criminal actions and causation would not save this statutory arrangement. Nor would the fact the crime of which the jury found the defendant guilty carried the maximum penalty and the state of mind issue the judge decided could only reduce, not enhance, the sentence for that crime.[20]

For the same reason, California's statutory scheme for determining the punishment to be imposed when a defendant's criminal act may or may not involve multiple objectives runs afoul of *Apprendi*, even if viewed as involving "sentence reduction" rather than "sentence enhancement." It still has the vice of committing to a judge rather than a jury the determination of the defendant's state of mind at the time he committed the criminal act and basing the defendant's punishment on that determination.

---

[20]In a case decided before *Apprendi*, Justice Scalia carried the above hypothetical to its logical conclusion, albeit in the context of "enhancement" factors. He did so to highlight the absurdity of allowing judges rather than jurors to determine the defendant's mens rea and other salient circumstances surrounding his criminal acts and use those determinations to establish the level of punishment he is to receive. "Suppose that a State repealed all of the violent crimes in its criminal code and replaced them with only one offense, 'knowingly causing injury to another,' bearing a penalty of 30 days in prison, but subject to a series of 'sentencing enhancements' authorizing additional punishment up to life imprisonment or death on the basis of various levels of mens rea, severity of injury, and other surrounding circumstances. Could the State then grant the defendant a jury trial, with requirement of proof beyond a reasonable doubt, solely on the question whether he 'knowingly cause[d] injury to another,' but leave it for the judge to determine by a preponderance of the evidence whether the defendant acted intentionally or accidentally, whether he used a deadly weapon, and whether the victim ultimately died from the injury the defendant inflicted? If the protections extended to criminal defendants by the Bill of Rights can be so easily circumvented, most of them would be, to borrow a phrase from Justice Field, 'vain and idle enactment[s], which accomplished nothing, and most unnecessarily excited Congress and the people on [their] passage.' " (*Monge v. California* (1998) 524 U.S. 721, 738-739 [118 S.Ct. 2246, 2255, 141 L.Ed.2d 615] (dis. opn. of Scalia, J.), italics omitted.)

*4. The error of committing this issue to the judge rather than the jury in this case is prejudicial.*

The majority argues, as an alternative ground for its decision, that the evidence defendant harbored multiple objectives is so overwhelming it would be harmless error to deny appellant his jury trial on this issue. While this is a closer question, in my view we cannot say the evidence here is so overwhelming that no reasonable juror could conceivably entertain a reasonable doubt about appellant's objective or objectives while engaged in this crime. Such a juror could have thought there was some chance, at least, appellant committed the attempted murder as a means of succeeding with his theft and not as an independent objective. That he might have been able to accomplish the theft with a lesser amount of force does not foreclose the possibility appellant thought otherwise. Nor does it foreclose the possibility a reasonable juror could have harbored a reasonable doubt that possibility existed here.

We should not make the mistake of substituting what we would have concluded about the appellant's objectives and motivations had we sat on the jury for the typically broad range of inferences different jurors might rationally have drawn from the evidence before them. Seldom if ever can it be said the evidence about a defendant's state of mind is so conclusive we can deem it harmless error to take that issue from the jury. It is one thing to find harmless error when the court denied the jury an opportunity to decide a simple, objective fact such as whether the area where a crime occurred was "public" and the evidence of that narrow fact is conclusive, as in *People v. Jimenez*.[21] It is an entirely different matter when a judge rather than a jury decides an issue as fundamental and inherently complex as the defendant's state of mind at the time he committed the criminal acts. Only in the most extraordinary circumstances could it be said an error of this magnitude is harmless. In my view, this case does not present such an extraordinary circumstance.

For the above reasons, I would reverse the consecutive 25-year-to-life sentence the court imposed on appellant, and remand to the trial judge with instructions to impose that term as a concurrent sentence.

Appellant's petition for review by the Supreme Court was denied May 23, 2001. Mosk, J., Kennard, J., and Brown, J., were of the opinion that the petition should be granted.

---

[21]*People v. Jiminez* (1995) 33 Cal.App.4th 54, 60 [39 Cal.Rptr.2d 12].