Filed 7/21/25  P. v. Garcia CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>PABLO GARCIA,<br><br>    Defendant and Appellant. | 2d Crim. No. B337066<br>(Super. Ct. No. BA493002)<br>(Los Angeles County) |

Pablo Garcia appeals from the judgment after a jury found him guilty of first degree murder (Pen. Code,[1] §§ 187, subd. (a), 189, subd. (a); count 1), possession of a firearm by a felon (§ 29800, subd. (a)(1); count 2), and possession of a firearm with an enumerated prior misdemeanor conviction (§ 29805, subd. (a); count 3), and found true an enhancement that he personally used a firearm in the commission of the murder (§ 12022.5, subd. (a)). For offenses committed 10 days later, the jury convicted Garcia of

---

[1] All undesignated statutory references are to the Penal Code.

fleeing a peace officer in disregard for the safety of others (Veh. Code, § 2800.2, subd. (a); count 7), and hit and run with injury (Veh. Code, § 20001, subd. (b)(1); count 8). Garcia admitted a prior strike conviction (§§ 667, subds. (b)–(i), 1170.12, subds. (a)–(d)). The trial court sentenced Garcia to 60 years to life in state prison plus a determinate term of six years, eight months.

Garcia contends substantial evidence does not support the conviction for hit and run with injury; the trial court erred in imposing multiple punishment without a jury determination that the crimes of murder and felon in possession of a firearm constituted more than one course of conduct, and felony evading and hit and run constituted more than one course of conduct; and trial counsel was ineffective. We affirm.

## FACTUAL AND PROCEDURAL HISTORY
### *Offenses on October 26, 2020*

Garcia approached Divante Williams outside a liquor store where Williams worked as a security guard. Garcia extended his arm and, as Williams tried to run away, shot him.

Williams died of a gunshot wound to his upper chest. A second bullet entered his abdomen and lodged near his hip. Three .380 caliber shell casings from a semiautomatic firearm were found in front of the liquor store door.

### *Offenses on November 5, 2020*

Jairo Moreno was shot three times outside his home. Officer Patricia Montejano followed a pickup truck that matched the description of the vehicle involved in the shooting. The truck drove at an unsafe speed, failed to stop at stop signs and red lights, drove on the wrong side of the road against oncoming traffic, drove on the center divider, and made unsafe left and right turns.

The truck flipped onto its side. Home security video admitted into evidence showed that five seconds after the truck came to rest, the driver, later identified as Garcia, climbed out the driver's door, which was now on top, and ran away. Police officers issued commands to Garcia but he did not comply.

The passenger, Julissa Ramirez, then climbed out of the truck. She stood for a moment, then fell to the ground. She crawled to a nearby parked car and used it to pull herself up, took a step, then lowered herself to the ground. She was transported from the scene.

A .380 caliber semiautomatic handgun was found in the center console of the pickup truck.

After midnight the night of the accident, and again the following day, Detectives Ricardo Rivera and Alejandro Galvan saw Ramirez in the hospital. She had been admitted and was in a patient room. In Rivera's opinion, Ramirez on both days "appeared . . . to be in a lot of pain" because she kept moving around to try to get comfortable and acted "annoyed." Galvan also believed she was in pain.

On both days, Ramirez was connected to an intravenous line. Rivera testified, "If I recall correctly, I do recall the injury that she had, I believe, around her eye—eyebrows." He continued, "It seemed like an abrasion, maybe a stitch. I don't recall exactly what it was at the time, but I do remember something over her right eye." A photograph of Ramirez in the hospital did not show an injury but showed a tattoo above her right eyebrow. Rivera did not see additional injuries. Galvan did not recall if he saw any injuries.

## Trial

Garcia was originally charged in count 7 with evading a

3

peace officer causing serious bodily injury. (Veh. Code, § 2800.3, subd. (a).) At the conclusion of the prosecution's case, the court acquitted Garcia of this charge pursuant to section 1118.1 because there was insufficient evidence of serious bodily injury. Count 7 was amended to evading a pursuing peace officer with "willful or wanton disregard for the safety of persons or property." (Veh. Code, § 2800.2, subd. (a).) The court denied the section 1118.1 motion to acquit on count 8, hit and run with injury (Veh. Code, § 20001, subd. (a)).

The parties stipulated that Garcia was prohibited from possessing a firearm based on a felony conviction and a qualifying misdemeanor conviction. Garcia requested a jury instruction for hit and run with property damage (Veh. Code, § 20002, subd. (a)) as a lesser offense for count 8. The court denied the request because Ramirez had been admitted to the hospital for at least two days after the accident. The detectives also testified they saw Ramirez "hooked up to an I.V." and said she was in pain. The jury acquitted Garcia of the attempted murder of Moreno but convicted him of counts 7 and 8.

*Sentencing*

For the offenses committed on October 26, the court imposed an indeterminate sentence of 60 years to life for first degree murder with a prior strike and personal use of a deadly weapon (§§ 187, subd. (a), 189, subd. (a), 667, subd. (e)(1), 1170.12, subd. (c)(1), 12022.5, subd. (a); count 1), and a consecutive determinate sentence of four years for felon in possession of a firearm (§ 29800, subd. (a)(1); count 2). Pursuant to section 654, the court stayed the sentence for possession of the same firearm with an enumerated misdemeanor prior (§ 29805, subd. (a); count 3). For the offenses committed on November 5,

4

the court imposed consecutive sentences of 16 months for evading a peace officer (Veh. Code, § 2800.2, subd. (a); count 7) and 16 months for hit and run with injury (Veh. Code, § 20001, subd. (b)(1); count 8).  The 16-month sentences were calculated as one-third the midterm of two years, doubled for the strike. (§§ 667, subd. (e)(1), 1170.12, subd. (c)(1).)

## DISCUSSION

### *Evidence of injury*

Garcia contends there was insufficient evidence that Ramirez was injured in the accident.  We are not persuaded.

"The driver of a vehicle involved in an accident resulting in injury to a person, other than himself or herself, . . . shall immediately stop the vehicle at the scene of the accident and shall fulfill the requirements of [Vehicle Code section] 20003 . . . ."  (Veh. Code, § 20001, subd. (a).)  The driver must give their name and other information to any police officer at the scene, and "shall render to any person injured in the accident reasonable assistance, including transporting, or making arrangements for transporting, any injured person to a physician, surgeon, or hospital for medical or surgical treatment if it is apparent that treatment is necessary or if that transportation is requested by any injured person."  (Veh. Code, § 20003, subd. (a).)

"[W]e review the whole record to determine whether *any* rational trier of fact could have found the essential elements of the crime . . . beyond a reasonable doubt.  [Citation.] The record must disclose substantial evidence to support the verdict—i.e., evidence that is reasonable, credible, and of solid value . . . . In applying this test, we review the evidence in the light most favorable to the prosecution and presume in support of the judgment the existence of every fact the jury could reasonably

5

have deduced from the evidence." (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.) "We 'must accept logical inferences that the jury might have drawn from the circumstantial evidence.' " (*Ibid.*)

We conclude there was sufficient circumstantial evidence for the jury to draw the inference that Ramirez was injured in the accident. She was the passenger in a vehicle that rolled onto its side. She climbed out of the truck, fell to the ground, and was unable to remain standing. She was transported to the hospital, was admitted, and remained hospitalized for at least two days. She was connected to an intravenous line. The jury also could have credited percipient witness testimony that she appeared to be in pain and had an injury over her eye.

Garcia contends that Ramirez might have been coincidentally hospitalized for some other reason like "drug withdrawal symptoms, malnutrition, pregnancy complications, cancer, an internal infection, or some other pre-existing medical condition." But there was no evidence at trial that Ramirez was pregnant or had any of the suggested conditions. "Where the circumstances reasonably justify the trier of fact's findings, a reviewing court's conclusion the circumstances might also reasonably be reconciled with a contrary finding does not warrant the judgment's reversal." (*People v. Zamudio, supra,* 43 Cal.4th at p. 358.)

*Knowledge of injury*

Garcia also contends there was insufficient evidence that he knew of Ramirez's injuries. We disagree.

For purposes of Vehicle Code section 20001, "criminal liability attaches to a driver who knowingly leaves the scene of an accident if [they] actually knew of the injury or if [they] knew

6

that the accident was of such a nature that one would reasonably anticipate that it resulted in injury to a person." (*People v. Holford* (1965) 63 Cal.2d 74, 80, fn. omitted; *People v. Harbert* (2009) 170 Cal.App.4th 42, 52.) "Such knowledge . . . may be imputed to the driver of a vehicle . . . where the seriousness of the collision would lead a reasonable person to assume that there must have been resulting injury." (*People v. Ryan* (1981) 116 Cal.App.3d 168, 180.) "[T]he knowledge of the driver is a factual question for the determination of the trier of fact" and "is usually proved by the facts and circumstances surrounding the individual case." (*Ibid.*; *People v. Rocovich* (1969) 269 Cal.App.2d 489, 493 [knowledge established where defendant rearended car, propelling it into another vehicle and onto an embankment]; *People v. Roche* (1942) 49 Cal.App.2d 459, 461–462 [knowledge established where defendant hit child on bicycle who remained lying in street].)

Here, Garcia lost control of his truck and flipped it onto its side. Ramirez was on the passenger side, closest to the pavement. The accident was sufficiently serious that the jury could conclude that Garcia would reasonably anticipate that Ramirez was injured. We conclude substantial circumstantial evidence supports the jury's verdict for count 8.

*Multiple punishment*

Garcia contends he improperly received multiple punishment pursuant to section 654 because the jury did not determine whether murder and felon in possession of a firearm on October 26 constituted more than a single ongoing course of conduct, and whether the felony evading and hit and run on November 5 constituted more than a single ongoing course of conduct. We again disagree.

7

"An act or omission that is punishable in different ways by different provisions of law may be punished under either of such provisions, but in no case shall the act or omission be punished under more than one provision."  (§ 654, subd. (a).)  " 'Although section 654 speaks in terms of an "act or omission," it has been judicially interpreted to include situations in which several offenses are committed during a course of conduct deemed indivisible in time.' "  (*People v. Clair* (2011) 197 Cal.App.4th 949, 958–959.)  "If, however, the defendant had multiple or simultaneous objectives, independent of and not merely incidental to each other, the defendant may be punished for each violation committed in pursuit of each objective even though the violations share common acts or were parts of an otherwise indivisible course of conduct."  (*People v. Cleveland* (2001) 87 Cal.App.4th 263, 267–268 (*Cleveland*), citing *People v. Beamon* (1973) 8 Cal.3d 625, 639.)

"The question of whether section 654 is factually applicable to a given series of offenses is for the trial court, and the law gives the trial court broad latitude in making this determination."  (*People v. DeVaughn* (2014) 227 Cal.App.4th 1092, 1113.)  "A trial court's express or implied determination that two crimes were separate, involving separate objectives, must be upheld on appeal if supported by substantial evidence."  (*People v. Brents* (2012) 53 Cal.4th 599, 618.)

Garcia contends two cases decided after the judgment here, *Erlinger v. United States* (2024) 602 U.S. 821 (*Erlinger*) and *People v. Lynch* (2024) 16 Cal.5th 730 (*Lynch*), entitle him to a jury determination whether the crimes on each offense date constituted more than one course of conduct on that date.

*Erlinger* involved a federal offense of possession of a

firearm by a felon, which was punishable by a maximum prison term of 10 years. But the defendant was charged pursuant to the Armed Career Criminal Act, which increased the punishment to a mandatory minimum of 15 years and a maximum of life in prison if the defendant had three or more qualifying prior convictions for offenses " 'committed on occasions different from one another.' " (*Erlinger*, *supra*, 602 U.S. at p. 825.) The high court held the Fifth and Sixth Amendments to the United States Constitution require a jury determination whether the prior offenses were committed on different occasions because it increased both the minimum and maximum sentence to which the defendant was exposed. (*Erlinger*, at pp. 835, 849.) The court relied upon *Apprendi v. New Jersey* (2000) 530 U.S. 466, 490 (*Apprendi*) and its progeny, which hold that "only a jury may find 'facts that increase the prescribed range of penalties to which a criminal defendant is exposed' " or that "increase a defendant's *minimum* punishment." (*Erlinger*, at p. 822.) In contrast here, the jury found Garcia guilty of the offenses of murder and felon in possession of a firearm committed on October 26, and felony evading and hit and run committed on November 5, and the court imposed sentences that did not exceed the statutory maximum for any of these offenses.

In *Lynch*, our Supreme Court considered section 1170, subdivision (b), as amended effective January 1, 2022, which generally prohibits imposition of the upper term unless the jury found true or the defendant admitted aggravating factors. (*Lynch*, *supra*, 16 Cal.5th at p. 742.) The court held that "a Sixth Amendment violation occurs when the trial court relies on unproven aggravating facts to impose an upper term sentence, even if some other aggravating facts relied on have been properly

9

established." (*Id.* at p. 768.) The court relied upon *Apprendi*, *supra*, 530 U.S. 466, to require "the right to a jury trial on 'any fact that *exposes* a defendant to a greater *potential* sentence.' " (*Lynch*, at p. 766.)

We conclude *Apprendi*, *supra*, 530 U.S. 466 does not apply here. "[I]t is well settled that the Sixth Amendment right to a jury trial does not apply to trial court findings under section 654." (*People v. Carter* (2019) 34 Cal.App.5th 831, 845–846; see also *People v. Morelos* (2008) 168 Cal.App.4th 758, 770.) "The question of whether section 654 operates to 'stay' a particular sentence does not involve the determination of any fact that could increase the penalty for a crime beyond the prescribed statutory maximum for the underlying crime." (*Cleveland*, *supra*, 87 Cal.App.4th at p. 266.) A defendant therefore is not entitled to a jury determination whether they had "a separate 'intent and objective' for multiple offenses occurring during a course of criminal conduct." (*Id.* at pp. 265, 270.)

As our colleagues in Division Seven of this district explained in *Cleveland*, *supra*, 87 Cal.App.4th at page 270: "Unlike in the 'hate crime' provision in *Apprendi*, section 654 is not a sentencing 'enhancement.' On the contrary, it is a sentencing 'reduction' statute. Section 654 is not a mandate of constitutional law. Instead, it is a discretionary benefit provided by the Legislature to apply in those limited situations where one's culpability is less than the statutory penalty for one's crimes. Thus, when section 654 is found to apply, it effectively 'reduces' the total sentence otherwise authorized by the jury's verdict. The rule of *Apprendi*, however, only applies where the nonjury factual determination *increases* the maximum penalty beyond the statutory range authorized by the jury's verdict. . . .

10

Here, however, every factual element of the [charged offenses] was submitted to the jury, and the jury found Cleveland guilty beyond a reasonable doubt of both crimes. . . . Indeed, in finding section 654 did not apply, Cleveland received the *same* sentence as he was exposed to by the jury's verdict."

*Cleveland* was followed by Division Four of this district in *People v. Solis* (2001) 90 Cal.App.4th 1002, 1021–1022. Our Supreme Court has cited *Cleveland* and *Solis* with approval for the proposition that "*Apprendi* does not apply to the factual determinations made by the trial judge in connection with the decision whether to stay sentences on particular counts under the provisions of section 654 prohibiting multiple punishment." (*People v. Black* (2005) 35 Cal.4th 1238, 1263–1264, overruled on another ground by *Cunningham v. California* (2007) 549 U.S. 270, 288–293, judg. vacated and cause remanded *sub nom. Black v. California* (2007) 549 U.S. 1190.) Because both *Erlinger* and *Lynch* are based on the rationale of *Apprendi*, they do not undermine *Cleveland*. Garcia was not entitled to a jury determination before the court imposed separate punishment for both murder and felon in possession of a firearm, and for both felony evading and hit and run.

*Ineffective assistance of counsel*

Garcia contends counsel was ineffective by failing to request a jury determination regarding application of section 654, and by failing to ask the trial court to stay counts pursuant to section 654. Again we disagree.

A defendant alleging ineffective assistance must prove (1) deficient performance, and (2) resulting prejudice. (*Strickland v. Washington* (1984) 466 U.S. 668, 687; *People v. Riel* (2000) 22 Cal.4th 1153, 1175.) "The defendant must show that there is a

11

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (*Strickland*, at p. 694.)  If a defendant fails to establish either prong, the claim should be denied.  (*Id.* at p. 687.)

Because a request for a jury determination regarding section 654 would have been meritless, we conclude counsel was not ineffective by failing to request it.  (*People v. Washington* (2017) 15 Cal.App.5th 19, 26.)  Regarding the failure to ask the trial court to stay counts, "we presume that the trial court knew the law and followed it." (*People v. Ramirez* (2021) 10 Cal.5th 983, 1042.)  We also conclude Garcia's claim of a reasonable probability the trial court would have reached a different outcome is undeveloped and does not show error.  (*Allen v. City of Sacramento* (2015) 234 Cal.App.4th 41, 52.)  No ground for reversal exists.

                                    DISPOSITION

The judgment is affirmed.

<u>NOT TO BE PUBLISHED.</u>

                                                    BALTODANO, J.

We concur:

        GILBERT, P. J.                          CODY, J.

                                        12

Deborah S. Brazil, Judge

Superior Court County of Los Angeles

_____

Aurora Elizabeth Bewicke, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Idan Ivri and David A. Wildman, Deputy Attorneys General, for Plaintiff and Respondent.