THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. BARNETT CARNEY, Defendant-Appellant.

First District (5th Division)  No. 1—98—4677

Opinion filed November 13, 2000.

Michael J. Pelletier and Linda Olthoff, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb and William L. Toffenetti, Assistant State's Attorneys, of counsel), for the People.

JUSTICE THEIS delivered the opinion of the court:

Defendant Barnett Carney was convicted of first degree murder and armed robbery after a jury trial. The State charged defendant with three counts of first degree murder for the killing of the decedent, Richarde Frazier. The three counts were for violation of section 9—1(a)(1) of the Illinois Criminal Code of 1961 for intentional murder, section 9—1(a)(2) knowing murder, and section 9—1(a)(3) felony murder. 720 ILCS 5/9—1(a)(1), (a)(2), (a)(3) (West 1998). The predicate felony for the felony murder count was armed robbery (720 ILCS 5/18—2 (West 1998)), a crime with which defendant was charged in a fourth count. The trial court sentenced defendant to consecutive terms of 29 years for first degree murder and 10 years for armed robbery.

Defendant appeals, arguing: (1) that he was denied his right to effective assistance of counsel because his attorney failed to request a separate jury verdict form for the offense of felony murder; (2) that the trial court erred when it imposed consecutive sentences for first degree murder and armed robbery under sections 5—8—4(a) and (b) of the Unified Code of Corrections (730 ILCS 5/5—8—4(a), (b) (West 1998)); and (3) that the trial court abused its discretion in imposing its sentences without properly considering all mitigating circumstances. Defendant filed a supplemental brief arguing that the Illinois consecutive sentencing scheme is unconstitutional because it violates the defendant's due process and trial-by-jury rights. For the reasons that follow, we affirm in part and reverse in part.

On September 26, 1997, the decedent, Frazier, was shooting dice with Charles Epps in front of the residence of 6401 South Maryland. Tamika Johnson, Epps' girlfriend, stood nearby watching for the police. After approximately 10 minutes, the game was interrupted by three people. Johnson testified that one of the individuals was wearing a Halloween mask and that the others wore hooded sweatshirts pulled tightly around their faces. She also testified that one of the hooded men and the masked man stopped where Frazier and Epps were shooting dice, and that the third man walked to the corner some 20 feet away. She stated that, after seeing this, she ran toward the porch of the residence at 6401 South Maryland and got down on the ground. She was about 15 feet away from Frazier, Epps, and the two individuals.

Johnson testified that she heard the unknown men tell Frazier and Epps to get on the ground and to surrender their money. She stated that, after both men got to their knees, the man with the mask held a gun close to Frazier and took money from his pocket. After he retrieved the money, she saw Frazier try to fight with his assailant. Johnson then heard a loud shot, and Frazier fell to the ground.

Paramedics arrived shortly thereafter and administered first aid to Frazier. Frazier died 15 days later in the hospital as a result of complications arising from the gunshot wound.

Officer Milton Owens, who was assigned to investigate the incident, interviewed Johnson and Epps. After the interview, he began looking for three men: defendant, Sean Tucker, and Kendall Morgan. A search of defendant's home uncovered a Halloween mask in his bedroom. Police discovered a black handgun during a search of Tucker's house. A later analysis of the weapon and a shell casing found at the scene revealed that the casing had been fired from that weapon.

Defendant later spoke to Assistant State's Attorney Muldoon, who reported defendant's account of what occurred on September 26, 1997, at trial. According to Muldoon, defendant stated that he and Sean Tucker were driving in defendant's car and that Tucker had the mask and the gun. When they arrived at 64th and Maryland, they saw a dice game in progress. Defendant indicated that Epps walked over to their vehicle and told them that Frazier was "sweet," meaning that he was an easy target for a robbery. At this point, they made a plan to rob the dice game. Defendant stated that Tucker wore the mask and had the gun, and that defendant had a skull cap pulled over his head. Defendant and Tucker decided to pretend to rob Epps and then take Frazier's money. Defendant stated that, while he pretended to pat down Epps, Tucker forced Frazier to the ground and took his money. Defendant then observed a struggle between the two, and Tucker shot Frazier. They took $4 from Frazier, Tucker ran home with the gun and mask, and defendant went to run and hide. Defendant went to Tucker's house the next day to retrieve the mask.

In closing argument, the State argued that it did not have to prove that defendant had any intent to kill the deceased and that, in order to find him guilty, the jury only needed to find that a murder had occurred during the course of a felony. The trial court then instructed the jury as to the charge of first degree murder:

"To sustain the charge of first degree murder, the State must prove the following propositions:

*First*: That the defendant, or one for whose conduct he is legally responsible, performed the acts which caused the death of Richarde Frazier; and

*Second*: That when the defendant, or one for whose conduct he is legally responsible, did so,

he intended to kill or do great bodily harm to Richarde Frazier;

or

he knew that his acts would cause death to Richarde Frazier;

or

he knew that his acts created a strong probability of death or great bodily harm to Richarde Frazier;

or

he was committing the offense of armed robbery.

If you find from your consideration of all the evidence that each one of these propositions has been proved beyond a reasonable doubt, you should find the defendant guilty.

If you find from your consideration of all the evidence that any one of these propositions has not been proved beyond a reasonable doubt, you should find the defendant not guilty."

Thereafter the State tendered and the court gave the jury general verdict forms for first degree murder and armed robbery. The jury returned a verdict of guilty on both offenses, and the court imposed consecutive sentences of 29 years for the offense of first degree murder and 10 years for armed robbery.

■ On appeal, defendant first argues that the trial court erred in imposing consecutive sentences for first degree murder and armed robbery under sections 5—8—4(a) and (b) of the Unified Code of Corrections. The applicable part of section 5—8—4(a) states:

"The court shall not impose consecutive sentences for offenses which were committed as part of a single course of conduct during which there was no substantial change in the nature of the criminal objective, unless, one of the offenses for which defendant was convicted was a Class X or Class 1 felony and the defendant inflicted severe bodily injury, *** in which event the court shall enter sentences to run consecutively." 730 ILCS 5/5—8—4(a) (West 1996).

The meaning and application of section 5—8—4(a) and the exceptions contained therein have been the subject of much litigation resulting in disagreement among the districts on various issues. In recent years, our supreme court has resolved many of these divisions. Most recently, the court found section 5—8—4(a) to be ambiguous because it is susceptible to two equally reasonable and conflicting interpretations. *People v. Whitney*, 188 Ill. 2d 91, 98, 720 N.E.2d 225, 229 (1999). The court then interpreted section 5—8—4(a) and held section 5—8—4(a) to require consecutive sentences where the defendant was convicted of either a Class X or Class 1 felony and where he inflicted severe bodily injury during the commission of that felony. *Whitney*, 188 Ill. 2d at 98-99, 720 N.E.2d at 229.[1] Relying on *Whitney*, defendant claims the trial court improperly imposed consecutive sentences

---

[1]The legislature recently amended section 5—8—4(a) to include first degree murder as a triggering offense. 730 ILCS 5/5—8—4(a) (West Supp.

because the severe bodily injury, Frazier's death, was proximately related to the murder count, not the Class X offense of armed robbery.

In his supplemental brief and argument, defendant contends section 5—8—4(a) is unconstitutional under *Apprendi v. New Jersey* because it violates the right of a defendant to due process and trial by jury by subjecting him to increased punishment without notice or a jury finding upon proof beyond a reasonable doubt of the facts qualifying defendant for the increased sentence. *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000). For the following reasons, we find the statute unconstitutional and vacate the trial court on the sentencing issue.

■ The State argues in its supplemental brief and argument that the defendant waived this issue by not raising it in a timely filed post-sentencing motion. However, defendant could not have raised this issue in a timely fashion because *Apprendi*, the case upon which defendant primarily relies, was not decided until June 2000, over a year and a half after sentencing. Regardless of whether defendant waived the issue, we choose to address it under the plain-error doctrine because sentencing issues are excepted from the doctrine of waiver when they affect a defendant's substantial rights. *People v. Brials*, 315 Ill. App. 3d 162, 170, 732 N.E.2d 1109, 1116 (2000).

In *Apprendi v. New Jersey*, a New Jersey statute provided that the possession of a firearm for an unlawful purpose was a "second degree" offense, punishable by imprisonment for between 5 and 10 years. *Apprendi*, 530 U.S. at 468, 147 L. Ed. 2d at 442, 120 S. Ct. at 2351. Another statute, described as a "hate crime" law, provided for an extended term of imprisonment if the trial judge found by a preponderance of the evidence that the defendant acted with the purpose of intimidating an individual based on race, color, gender, handicap, religion, sexual orientation or ethnicity. *Apprendi*, 530 U.S. at 469, 147 L. Ed. 2d at 442, 120 S. Ct. at 2351. This hate crime statute extended the sentence for a second degree offense for between 10 and 20 years. *Apprendi*, 530 U.S. at 469, 147 L. Ed. 2d at 442, 120 S. Ct. at 2351. Thus, the trial judge unilaterally determined if the crime was motivated by bias based on race, etc. and then increased the sentence.

---

1999) ("The court shall not impose consecutive sentences for offenses which were committed as part of a single course of conduct during which there was no substantial change in the nature of the criminal objective, unless: (i) one of the offenses for which defendant was convicted was first degree murder or a Class X or Class 1 felony and the defendant inflicted severe bodily injury, *** in which event the court shall enter sentences to run consecutively"). Thus, the concern raised by *Whitney* about the relationship between the severe bodily injury and the Class X or Class 1 felony is no longer an issue.

■ The Supreme Court found this statutory scheme violated the defendant's due process rights and stated that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490, 147 L. Ed. 2d at 455, 120 S. Ct. at 2362-63. The Court further found that it was "unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed. It is equally clear that such facts must be established by proof beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490, 147 L. Ed. 2d at 455, 120 S. Ct. at 2363.

After *Apprendi*, the law is clear that a jury must decide beyond a reasonable doubt any facts that would increase the range of defendant's sentence. *Apprendi* left unanswered, however, the question of whether it applied to consecutive sentencing.

The Illinois Appellate Court recently addressed this issue and held that *Apprendi* does apply to consecutive sentences and, specifically, section 5—8—4(a). *People v. Clifton*, 327 Ill. App. 3d 707, 725-26 (2000). This court found that section 5—8—4(a) operates differently from the extended-sentencing statute ruled unconstitutional in *Apprendi*. *Clifton*, 327 Ill. App. 3d at 725. Instead of increasing the range of sentences for a certain crime, our statute mandates when a defendant who is being sentenced for multiple convictions resulting from the same course of conduct will serve sentences concurrently or consecutively. The statute works to extend the range of sentences to which a defendant may be exposed for a given course of conduct. *Clifton*, 327 Ill. App. 3d at 725-26.

If the court does not find that the defendant inflicted severe bodily injury, the sentences must run concurrently. Effectively, then, the maximum penalty would be the longest sentence for the most serious offense. *Clifton*, 327 Ill. App. 3d at 726. If the court found that the defendant caused severe bodily injury, the sentences must run consecutively. In that case, the defendant could be imprisoned for the sum of the maximum penalties for the two most serious felonies involved. *Clifton*, 327 Ill. App. 3d at 726.

The court followed *Apprendi* and agreed that "the relevant inquiry is one not of form, but of effect—does the required finding expose the defendant to a greater punishment than that authorized by the jury's guilty verdict?" *Apprendi*, 530 U.S. at 494, 147 L. Ed. 2d at 457, 120 S. Ct. at 2365. The *Clifton* court found the effect of section 5—8—4(a) "is that a factual finding of serious bodily injury by a judge will increase, even to the point of doubling, the actual and potential

sentence that the defendant may receive for a given course of conduct." *Clifton*, 327 Ill. App. 3d at 726. *Clifton* found the effect of the statute to violate the same constitutional principles the Supreme Court found so fundamental in *Apprendi*. *Clifton*, 327 Ill. App. 3d at 726. Therefore, *Clifton* held the consecutive sentencing scheme under section 5—8—4(a) to be unconstitutional. *Clifton*, 327 Ill. App. 3d at 727.

■ In this case, the judge determined the factual issue of whether the severe bodily injury to Richarde Frazier occurred during the commission of the armed robbery. The jury was never asked to decide these facts. Therefore, we hold that the imposition of consecutive sentences for the convictions of first degree murder and armed robbery in this case under section 5—8—4(a) is unconstitutional under *Apprendi*, *Clifton* and *Whitney*.

The State argues in its supplemental brief and argument that *Apprendi* only applies to facts which increase the penalty for a crime beyond the prescribed statutory maximum and therefore is not applicable to the present case. However, *Apprendi* makes clear that it is the effect of the statute, not the form, that controls. We agree with *Clifton* that the effect of section 5—8—4(a) is that a factual finding by the judge as to severe bodily injury will increase the defendant's sentence. The effect of section 5—8—4(a), then, is very similar to the effect of the New Jersey statute the Supreme Court found unconstitutional in *Apprendi*. The State's attempts to distinguish *Apprendi* from the present case are unpersuasive and we accordingly reject them.

Defendant next asserts that section 5—8—4(b) does not apply to this case because the offenses occurred within a single course of conduct and, therefore, consecutive sentences were unwarranted. The State concedes this point as it failed, both in its briefs and in oral arguments, to dispute defendant's claim. Therefore, we need not discuss this issue. Based on our determination, we need not discuss defendant's other sentencing issues.

■ Defendant next claims that he was denied effective assistance of counsel at trial. In order to establish ineffective assistance of counsel, a defendant must prove both prongs of the *Strickland v. Washington* test, deficiency and prejudice. *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984); *People v. Albanese*, 104 Ill. 2d 504, 473 N.E.2d 1246 (1984). First, the defendant must prove that counsel's performance was so deficient that defendant was deprived of counsel as guaranteed by the sixth amendment. "A court measures counsel's performance by an objective standard of competence under prevailing professional norms." *People v. Evans*, 186 Ill. 2d 83, 93, 708 N.E.2d 1158, 1163 (1999).

Second, the defendant must establish prejudice. The defendant

must demonstrate "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068. A reasonable probability is a probability sufficient to undermine confidence in the outcome and is more than an "outcome-determinative" test. "The defendant must show that counsel's deficient performance rendered the result of the trial unreliable or the proceeding fundamentally unfair." *Evans*, 186 Ill. 2d at 93, 708 N.E.2d at 1164. A defendant must satisfy both prongs of the *Strickland* test. Therefore, " 'failure to establish either proposition will be fatal to the claim.' " *People v. Richardson*, 189 Ill. 2d 401, 411, 727 N.E.2d 362, 369 (2000), quoting *People v. Sanchez*, 169 Ill. 2d 472, 487, 662 N.E.2d 1199, 1208 (1996).

■ Defendant argues that his attorney's performance was deficient because he failed to tender a separate felony murder verdict form. While the issues instruction defined first degree murder under any one of four theories, the general verdict form submitted allowed the jury to find the defendant guilty of first degree murder without specifying the theory upon which they relied.

When deciding whether counsel was competent, we must look to the state of the law at the time of trial. The law in Illinois was well settled at that time that separate verdict forms were not mandatory. In *People v. Travis*, 170 Ill. App. 3d 873, 890, 525 N.E.2d 1137, 1147 (1988), the court rejected the argument that distinctions between the various methods of the charge were required in jury verdict forms. It believed the best rule to be "that the jury need only be unanimous with respect to the ultimate question of defendant's guilt or innocence of the crime charged, and unanimity is not required concerning alternate ways in which the crime can be committed, and, accordingly, we so hold." *Travis*, 170 Ill. App. 3d at 890, 525 N.E.2d at 1147; see also *People v. Diaz*, 244 Ill. App. 3d 268, 614 N.E.2d 268 (1993).

The committee note to the general verdict form in the Illinois Pattern Jury Instructions, Criminal, supports the holding in *Travis*. The committee commented that "distinguishing among the various ways in which a given charge is brought is not required by law" and is "not mandatory." Illinois Pattern Jury Instructions, Criminal, No. 26.01, Committee Note (4th ed. 2000) (hereinafter IPI Criminal 4th). Therefore, defendant's claims that he and the jury were entitled to a separate jury verdict form are meritless.

The committee further states that the court "has the discretion" to use the separate verdict form "whenever the court believes such use would assist the jury" in deciding guilt or innocence. IPI Criminal 4th No. 26.01, Committee Note. Defendant does not assert that a sep-

arate verdict form for felony murder would have assisted the jury in his case. Although committee comments are not the law, the trial judge may deviate from the suggested format only where it is necessary to conform to unusual facts or new law. *People v. Banks*, 287 Ill. App. 3d 273, 280, 678 N.E.2d 348, 353 (1997). We do not find either situation here requiring a deviation from the committee notes. We therefore find that defense counsel's performance was not deficient and did not constitute ineffective assistance of counsel.

We further reject defendant's argument that counsel's failure to request a separate verdict form demonstrated a failure to know the law. Under Illinois law, when a defendant is charged with several counts arising out of a single act and a general verdict is returned, sentence is imposed on the most serious offense. *People v. Cardona*, 158 Ill. 2d 403, 411, 634 N.E.2d 720, 723 (1994). Here, defendant was sentenced on the most serious crime, intentional first degree murder, and also on the armed robbery conviction. With the separate verdict form, defendant argues, the jury could have specifically chosen felony murder, thereby precluding sentencing on the underlying felony of armed robbery.

Under *People v. King*, 66 Ill. 2d 551, 363 N.E.2d 838 (1977), multiple convictions are improper if they are based on lesser-included offenses. See also *People v. Smith*, 183 Ill. 2d 425, 432, 701 N.E.2d 1097, 1100 (1998). Armed robbery is the underlying felony of felony murder in this case and is, therefore, a lesser-included offense of felony murder. As such, the included offense of armed robbery cannot support a separate conviction and sentence. *People v. Coady*, 156 Ill. 2d 531, 537, 622 N.E.2d 798, 801 (1993), citing *People v. Donaldson*, 91 Ill. 2d 164, 170, 435 N.E.2d 477, 479-80 (1982) ("defendant correctly notes that armed robbery was the offense underlying the felony murder charge and, as an included offense, will not support a separate conviction and sentence"). Therefore, if the jury found the defendant guilty of felony murder, defendant could only be sentenced on the felony murder conviction and not on the lesser-included offense of armed robbery. Defendant suggests counsel must have failed to recognize the potential for disparate sentences.

Without addressing the substance of defendant's argument, we find that defendant cannot demonstrate any prejudice from the failure of defense counsel to request a separate jury verdict form for felony murder based upon our decision to vacate defendant's consecutive sentences. We hold, therefore, based on the above-mentioned committee note and case law, that the failure to tender a separate felony murder jury instruction did not fall below an objective standard of competence or constitute deficient performance at the time of trial. After

*Apprendi v. New Jersey*, however, the law may change with regard to jury instructions and jury verdicts. *Apprendi*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348. Nevertheless, this is not the issue in the present case. Defendant cannot, therefore, establish either prong of the *Strickland* test and his ineffective assistance of counsel claim fails.

■ Defendant further argues that the trial court abused its discretion in sentencing him to consecutive sentences of 29 years for first degree murder and 10 years for armed robbery. To be properly preserved on appeal, an issue must be raised both at trial and in a posttrial motion. *People v. Enoch*, 122 Ill. 2d 176, 186, 522 N.E.2d 1124, 1129 (1988). Defendant did not raise this issue at the time of sentencing or in a postsentencing motion. Therefore, we find that the defendant waived this argument.

However, we will briefly address the argument. Defendant argues that the sentence does not adequately take into account defendant's young age, lack of significant prior criminal history, rehabilitative potential and that he was found guilty on a theory of accountability.

"A reviewing court gives great deference to the trial court's judgment regarding sentencing because the trial judge, having observed the defendant and the proceedings, has a far better opportunity to consider these factors than the reviewing court, which must rely on the 'cold' record." *People v. Fern*, 189 Ill. 2d 48, 53, 723 N.E.2d 207, 209 (1999). When a trial court sentences a defendant to a term of imprisonment within the statutory range, we will not disturb that sentence absent an abuse of discretion. *People v. Goyer*, 265 Ill. App. 3d 160, 169, 638 N.E.2d 390, 396 (1994). The trial court is the proper place to balance the factors in mitigation and aggravation and make a reasoned decision as to the appropriate sentence. *People v. Bell*, 313 Ill. App. 3d 280, 282, 729 N.E.2d 531, 534 (2000). This court presumes the trial court took the mitigating evidence into consideration, absent evidence to the contrary. *People v. Zarka-Nevling*, 308 Ill. App. 3d 516, 526, 720 N.E.2d 334, 341 (1999).

In this case, all of the factors the defendant raises were included in the presentence investigation report, most of which were also discussed during the sentencing proceeding. The trial judge stated that she considered all of the factors in aggravation and mitigation, together with all of the evidence and the presentence investigation report, in formulating the sentence. The sentence of 29 years for first degree murder was well within the statutory range for that crime of 20 to 60 years. 730 ILCS 5/5—8—1(a)(1) (West 1998). Defendant's 10-year sentence for armed robbery was also within the statutory range of 6 to 30 years. 730 ILCS 5/5—8—1(a)(3) (West 1998). Therefore, we find there was no abuse of discretion in sentencing and the sentences were not excessive.

For the reasons set forth above, we thereby affirm Barnett Carney's convictions for first degree murder and armed robbery, but vacate his sentences and order his sentences to run concurrently.

Affirmed in part and vacated in part.

GREIMAN and ZWICK, JJ., concur.