FOURTH DIVISION
FILED: April 19, 2007

No. 1-04-1946

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court |
| | ) | of Cook County, Illinois |
| Plaintiff-Appellee. | ) | |
| | ) | |
| v. | ) | No. 99 CR 1111 |
| | ) | |
| LERATIO SMITH, | ) | |
| | ) | Honorable Bertina Lampkin, |
| Defendant-Appellant. | ) | Judge Presiding |

JUSTICE MURPHY delivered the opinion of the court:

On October 23, 2003, after a jury trial, defendant, Leratio Smith, was found guilty of first-degree murder, armed robbery, and attempted armed robbery. He was sentenced to 60 years' imprisonment for murder, a concurrent term of 20 years for armed robbery, and a consecutive term of 8 years for attempted armed robbery. On appeal, defendant argues that the convictions must be reversed because the trial court abused its discretion when it denied his request for a separate jury verdict form for felony murder. For the reasons that follow, we modify defendant's attempted armed robbery sentence to run concurrently with his other sentences.

## I. BACKGROUND

An indictment charged defendant with four counts of first-degree murder of Tony Colon

(intentional murder, knowing murder, and two counts of felony murder predicated on armed robbery and attempted armed robbery), armed robbery of Chris Callas, and attempted armed robbery of Tony Colon.

The State presented evidence at trial showing that on December 4, 1998, at 11:45 p.m., Tony Colon was standing outside Pete's Sidelines Bar talking on his cellular phone when defendant grabbed Colon around the neck, pointed his gun at him, and brought him into the bar. Defendant told everyone to get on the floor and told the bartender, Chris Callas, to open the register. Defendant struggled with Colon and attempted to grab his cellular phone, and the phone fell to the floor. Colon said that defendant was holding a BB gun, not a real gun. Defendant said that he would show him it was a real gun and shot Colon in the chest. Defendant proceeded to take the money off the bar and left.

An off-duty police officer was crossing the street toward Pete's Sidelines when he heard a loud pop. He saw defendant walk quickly out of the bar while placing a dark object in his waistband and get into the driver's side of a dark, older-model Buick. He followed defendant and noted the car's make, model, and license plate number. He also saw that there was someone sitting in the front passenger side of the car. However, he soon lost sight of the car.

Michelle Boyd, who was defendant's girlfriend, testified that defendant and Charles Taylor left Boyd's sister's apartment at 9 p.m. on December 4, 1998, and returned after midnight. When they returned, Boyd asked defendant where he had been, and he replied that he did not mean to shoot that man. Defendant told her he went to a club armed with a gun and pushed a man talking on a cellular phone into the lounge. He told everyone to get on the floor and to put

their money on the counter. She testified that defendant further told her that a man grabbed him from behind, so defendant hit him over the head with a gun. Defendant said that the man thought it was a BB gun. Defendant shot the man, then he ran out of the bar. Defendant handed Boyd $700, which he said he had gotten from the bar, and then took the money back. Boyd testified that when she and defendant returned to their own apartment, defendant hid the money and gun. In the morning, defendant's brother told him that his license plates were on television. Defendant told Boyd he was sorry and asked her to go to his mother's house with him. There, he called the police and reported his license plates stolen.

The police arrested defendant when they responded to his report of stolen license plates. A police detective testified that defendant, after learning that he was positively identified in a lineup, confessed to the robbery and shooting. Defendant also gave an inculpatory court-reported statement to an assistant State's Attorney. In this statement, he admitted that he intended to rob someone with a gun to make money to buy Christmas presents. He further stated that Colon charged defendant during the robbery and that he shot Colon when he started to charge at him again.

In his defense, defendant testified that on December 4, 1998, he and Taylor left in defendant's car to look for Taylor's girlfriend. Taylor stopped the car and walked across the street, where he approached a man standing outside. When Taylor put his hand on the man's neck, defendant assumed that the man was a friend of Taylor's. The two went inside a bar, and after a minute or two, defendant heard a gunshot. Taylor left the bar while placing a gun under his shirt and entered the car on the driver's side. Defendant asked Taylor what was going on, and

he responded that he had a fight with someone in the bar and shot him. Defendant told Taylor to get out of his car and to get rid of the gun. Taylor pulled over and told him he would meet him later. Defendant proceeded to his girlfriend's sister's house, where Taylor later arrived. Taylor gave defendant money, which defendant gave to his girlfriend.

Defendant testified that after his arrest, the police hit him, put a gun to his head, and threatened to have his child taken away in order to coerce his confession.

At an informal instructions conference, defendant requested that the trial court give the jury a separate verdict form for felony murder. The trial court stated, "He is charged with first degree murder based upon armed robbery, first degree murder based upon attempted armed robbery, first degree murder based on knowing and intentional, so if you want different verdict forms, you will get all of them, unless the State is nolle-ing [sic] some of the charges. We are not going to separate out some of them and have *** confusion for the jury. You can think about it." The court proceeded to say that the State should "have it prepared correctly, based on what the IPI says." The State responded that it might proceed on only felony murder.

At the formal instructions conference, defense counsel again asked that the murder verdicts be individualized so that the jury could make specific findings as to each one. He cited the importance of knowing what charge the jury finds defendant guilty of because of the different consequences flowing from different verdicts. The State responded that giving separate verdict forms would set a "bad precedent" because of the possibility of inconsistent verdicts. The trial court denied defendant's request. The jury was therefore given general verdict forms (one guilty and one not guilty) for first-degree murder, armed robbery, and attempted armed robbery.

The jury found defendant guilty of first-degree murder of Colon, armed robbery of Callas, and attempted armed robbery of Colon. The trial court denied defendant's motion for new trial, which included the argument that his request for a separate verdict form for felony murder was erroneously denied.

Defendant chose to be sentenced under the sentencing statute in effect when the crime was committed rather than under the version in place at the time of sentencing. In 1998, section 5-8-4(a) of the Unified Code of Corrections provided that when multiple sentences are imposed on a defendant at the same time, a court shall not impose consecutive sentences for offenses that were committed as part of a single course of conduct during which there was no substantial change in the nature of the criminal objective, unless one of the offenses was a Class X or Class 1 felony and the defendant inflicted severe bodily injury during the commission of that felony. *People v. Whitney*, 188 Ill. 2d 91, 98-99 (1999); 730 ILCS 5/5-8-4(a) (West 1996). The trial court found that the offenses were committed as part of a single course of conduct. It also found that the attempted armed robbery charge was mandatorily consecutive because there was severe bodily injury to Colon, the victim in the attempted armed robbery case. Accordingly, the court sentenced defendant to 60 years' imprisonment for the murder, a concurrent term of 20 years for armed robbery, and a consecutive term of 8 years for attempted armed robbery.

The trial court denied defendant's motion to reconsider his sentence, and this appeal followed.

## II. ANALYSIS

Defendant's sole contention on appeal is that the trial court abused its discretion when it

denied his request for a separate jury verdict form for felony murder. Defendant argues that if the jury had returned a verdict of guilty for the count of felony murder based on the attempted armed robbery of Colon, he would not have received a consecutive eight-year sentence because the offense underlying the felony murder charge would not have supported a separate conviction and sentence under *People v. Coady*, 156 Ill. 2d 531, 537 (1993). Neither party cites a case where a defendant sought a separate verdict form for felony murder but was denied such a request. Defendant analogizes these circumstances to the denial of an instruction for lesser-included offenses, while the State cites cases that are distinguishable. This is an issue of first impression.

A jury instruction is to "convey to the minds of the jury the correct principles of law applicable to the evidence submitted to it." *People v. Harris*, No. 98942, slip op. at 33 (February 1, 2007). Further, Supreme Court Rule 451(a) provides that whenever the pattern jury instructions 4th contain an instruction applicable in a criminal case and the court determines that the jury should be instructed on the subject, the pattern instruction shall be used, unless the court determines that it does not accurately state the law. 210 Ill. 2d 451(a); *People v. Harris*, slip op. at 32. An appellate court applies an abuse-of-discretion standard when reviewing a trial court's decisions relating to verdict forms. *People v. Roberts*, 351 Ill. App. 3d 684, 690 (2004).

In a criminal trial, a jury is required to return a general verdict as to each offense charged. 725 ILCS 5/115-4(j) (West 2004). Just as an instruction must be given where there is any evidence that supports a party's theory of the case, "it is the trial judge's duty to give *** [a] verdict form when enough evidence has been presented to 'support' or 'warrant' the giving of such." *People v. Newell*, 196 Ill. App. 3d 373, 382 (1990). The State argues on appeal that no

reasonable jury would have found defendant guilty of felony murder but not guilty of both intentional and knowing murder. However, the State's position is inconsistent with its own actions, as it charged defendant with felony murder, argued in closing that he was guilty under that theory, and submitted it to the jury. Further, during the informal instruction conference, the State said that it was considering only proceeding on felony murder. While evidence presented by the State supported the charge of intentional murder, defendant also cites evidence supporting the charge of felony murder. For example, Michelle Boyd testified that shortly after the crime, defendant told her that he did not mean to shoot that man, and in his confession, defendant stated that he did not go to the tavern to hurt anyone but, rather, that all "[he] wanted was the money." In his confession, he also stated that Colon became aggressive and attempted to grab at the gun, and defendant told him not to force him to do anything he did not want to do. Therefore, evidence was presented at trial that defendant shot Colon while attempting to rob him. Defendant also testified at trial that he waited in his car while Taylor approached a man standing outside the bar, put his hand on the man's neck, had a fight with someone in the bar and shot him, and left the bar while placing a gun under his shirt.

Illinois Pattern Jury Instructions, Criminal, No. 26.01 (4th ed. 2000) (hereinafter IPI Criminal 4th No. 26.01), gives three alternatives for the concluding instruction. The committee comment suggests that paragraph [1] be used when there is a single charge and paragraph [2] be used when multiple offenses are charged. As to paragraph [3], it provides:

> "When a defendant is charged in multiple counts with an offense that can
>
> be charged with different elements, paragraph [3] may be used if the court

believes its use will assist the jury in deciding the issues. An example would be a defendant charged in three separate counts with aggravated battery based on his alleged (1) causing great bodily harm, (2) causing bodily harm to a police officer, and (3) committing a battery upon a public way. Each of these charges is called aggravated battery, but each contains an element that must be proved beyond a reasonable doubt that neither of the other charges contains." IPI Criminal 4th No. 26.01, Committee Note, at 364.

Preliminarily, the fact that the comments to IPI Criminal 4th No. 26.01 give an option suggests that the general verdict form was not intended to be used in every circumstance.

In addition, here, defendant was charged with four counts of first degree murder based on three theories: intentional murder (720 ILCS 5/9-1(a)(1) (West 2004)), knowing murder (720 ILCS 5/9-1(a)(2) (West 2004)), and felony murder (720 ILCS 5/9-1(a)(3) (West 2004)). Each has elements that are different from the others. For example, to show intentional murder, the State must prove that the defendant intended to kill or do bodily harm to the individual or that he or she knew that such acts would cause the death of the individual. 720 ILCS 5/9-1(a)(1) (West 2004). To establish knowing murder, the State need not show that the defendant had a specific intent to kill or do great bodily harm or that the defendant knew that his or her acts would achieve murderous results. *People v. Howery*, 178 Ill. 2d 1, 42-43 (1997), citing *People v. Bartall*, 98 Ill. 2d 294 (1983). The requisite mental state for knowing murder under section 9-1(a)(2) is knowledge "that such acts create a strong probability of death or great bodily harm to that individual." 720 ILCS 5/9-1(a)(2) (West 2004). For felony murder, the State is not required

to prove that the defendant could foresee the death or that the defendant committed murder; it must merely show that the defendant intended to commit the underlying felony. *People v. Causey*, 341 Ill. App. 3d 759, 769 (2003).

More important, however, a verdict of guilty on felony murder instead of intentional or knowing murder under these circumstances has vastly different consequences. When a general verdict of guilty is returned on an indictment that contains several counts arising out of the same transaction, such as the four murder counts here, a defendant is considered guilty on each count to which proof is applicable. *People v. Rodriguez*, 169 Ill. 2d 183, 190 (1996), citing *People v. Scott*, 148 Ill. 2d 479 (1992). "[W]here multiple convictions are obtained for offenses arising out of a single act, sentence is imposed on the most serious offense." *People v. Cardona*, 158 Ill. 2d 403, 411 (1994). The most serious of the first-degree murder charges in this case is the one with the most culpable mental state: intentional murder. *Cardona*, 158 Ill. 2d at 412. Accordingly, defendant was sentenced to 60 years' imprisonment on the intentional first-degree murder conviction and was also sentenced to a concurrent term of 20 years for armed robbery of Callas and a consecutive term of 8 years for attempted armed robbery of Colon. See 730 ILCS 5/5-8-4(a) (West 1996).

However, if defendant had been found guilty of felony murder predicated on attempted armed robbery and not guilty of both intentional and knowing murder, the resulting sentences would have been different. Multiple convictions are improper if they are based on lesser-included offenses. *People v. King*, 66 Ill. 2d 551, 566 (1977). Because attempted armed robbery is the underlying felony of one of the felony murder counts, it is a lesser-included offense of

felony murder and cannot support a separate conviction and sentence. *Coady*, 156 Ill. 2d at 537.

Therefore, if the jury had found defendant guilty of felony murder based on attempted armed

robbery, defendant could only be sentenced on the felony murder conviction and not on the

lesser-included offense of attempted armed robbery.

In support of its argument that separate verdict forms were unnecessary, the State relies

on the general proposition articulated in *People v. Travis*, 170 Ill. App. 3d 873 (1988), and

*People v. Diaz*, 244 Ill. App. 3d 268 (1993), that it is sufficient for jurors to unanimously agree

on their ultimate conclusion that the defendant was guilty of the crime charged, even if they do

not agree on the manner in which the crime was committed. These cases are distinguishable,

however.

In *People v. Travis*, 170 Ill. App. 3d 873 (1988), the court rejected the argument asserted

by the defendant that distinctions among the various ways in which a given charge is brought

were mandatory. An instruction allowed the defendant to be convicted of murder as a principal

or under an accountability theory based on three different states of mind or by the defendant's

commission of one of three felonies. The defendant in *Travis* argued that, under the instruction,

he could have been convicted of murder under a general verdict even though the jury may not

have unanimously agreed as to whether guilt was direct or vicarious, whether defendant or his

"agent" possessed one of the requisite states of mind, or whether the defendant committed one of

three different felonies.

The *Travis* court rejected the defendant's argument: "the best rule is that the jury need

only be unanimous with respect to the ultimate question of defendant's guilt or innocence of the

crime charged, and unanimity is not required concerning alternate ways in which the crime can be committed." *Travis*, 170 Ill. App. 3d at 890. To hold otherwise, the court held, "would create chaos with an already burdened criminal justice system" and would "unnecessarily hobble an already staggering court system." *Travis*, 170 Ill. App. 3d at 892. It concluded, "All that is necessary is that the jury is unanimous that he is guilty of the offense, regardless of their agreement on the underlying conduct." *Travis*, 170 Ill. App. 3d at 892.

In *People v. Diaz*, 244 Ill. App. 3d 268 (1993), the court gave an instruction that the jury could convict the defendant of aggravated battery if he either caused great bodily harm to the victim or caused bodily harm while using a deadly weapon. The jury was given alternative, general verdict forms for aggravated battery, one finding him guilty and the other finding him not guilty. The appellate court discussed the United States Supreme Court's opinion in *Schad v. Arizona*, 501 U.S. 624, 115 L. Ed. 2d 555, 111 S. Ct. 2491 (1991), where a jury convicted the defendant of first-degree murder. The prosecutor argued for a first-degree murder conviction based on the theories of both felony murder and premeditated murder, and the jury convicted the defendant of first-degree murder in a general verdict without indicating on which theory it relied. A plurality of the Court held that when a single crime can be committed in various ways, jurors need not agree on the mode of commission. *Schad*, 501 U.S. at 631-32, 649, 115 L. Ed. 2d at 565, 577, 111 S. Ct. at 2497, 2506. While some alternative courses of conduct are so different that the due process clause prohibits them from being defined as alternative means of committing a single offense, there was nothing unconstitutional about offering a jury premeditated murder and felony murder as alternative methods of committing first-degree murder. *Schad*, 501 U.S. at

632-33, 649-50, 115 L. Ed. 2d at 566, 577, 111 S. Ct. at 2497-98, 2506. The *Diaz* court held, therefore, "Constitutional limitations on State instructional combinations, whatever they may be following *Schad*, were not crossed in this case." *Diaz*, 244 Ill. App. 3d at 273.

*Travis* and *Diaz* are distinguishable. In both *Travis* and *Diaz*, unlike here, the verdicts had no impact on the defendants' sentences. In *Travis*, the defendant's sentences for murder, home invasion, aggravated criminal sexual assault, and burglary were to be served concurrently. *Diaz* involved instructions for aggravated battery, and there was no allegation that the sentence would change if the trial court had separated the aggravated battery instructions based on which alternative course of conduct that the defendant committed. Similarly, in *Schad*, the defendant was charged with and convicted of only murder, unlike here, where defendant was also convicted of the underlying felonies. See also *People v. Wilson*, 61 Ill. App. 3d 1029, 1033 (1978) (it is not error to submit general verdict forms for murder even though a defendant is prosecuted under more than one theory). In addition, the defendants in both cases waived their arguments when they failed to object at trial and to raise them in their posttrial motions. *Travis*, 170 Ill. App. 3d at 889; *Diaz*, 244 Ill. App. 3d at 270. Finally, both involved jury instructions, not the issue of whether the trial court erred by denying requests for a separate verdict form.

*People v. Carney*, 317 Ill. App. 3d 806 (2000), *rev'd on other grounds*, 196 Ill. 2d 518 (2001), ruled on similar facts. In *Carney*, the defendant was charged with armed robbery and first-degree murder based on the theories of intentional murder, knowing murder, and felony murder predicated on armed robbery. The defendant was convicted of murder and armed robbery and sentenced to consecutive terms of 29 years for murder and 10 years for armed robbery.

While the issues instruction defined first-degree murder under any one of four theories, the general verdict form allowed the jury to find the defendant guilty of first-degree murder without specifying the theory upon which they relied. The defendant argued that his attorney's performance was deficient because he failed to tender a separate verdict form for felony murder. Based on *Travis*, *Diaz*, and the comment to IPI Criminal 4th No. 26.01, *Carney* concluded that defense counsel's performance was not deficient. *Carney*, 317 Ill. App. 3d at 815. The court declined to address prejudice, the second prong of a claim of ineffective assistance of counsel, because it already decided to vacate the consecutive sentences on other grounds. *Carney*, 317 Ill. App. 3d at 815-16; *People v. Carney*, 327 Ill. App. 3d 998, 1001 (2002).

While the facts in *Carney*, 317 Ill. App. 3d 806, are quite similar, its holding rested on defense counsel's failure to tender a separate verdict form, not the trial court's denial of defense counsel's request. Furthermore, the court decided not to address whether the defendant was prejudiced by his counsel's failure to request a separate verdict form, since it was already reversing the consecutive sentence on other grounds.

In support of its argument, the State also cites to the comment to IPI Criminal 4th No. 26.01. It provides, "When a defendant is charged in multiple counts that can be charged with different elements," the court has the discretion to use different verdict forms if it "believes its use will assist the jury in deciding the issues. *** The Committee wishes to emphasize that distinguishing among the various ways in which a given charge is brought is not required by law." IPI Criminal 4th No. 26.01, Committee Note, at 364-65. The State argues that defendant has not shown how separate verdict forms would assist the jury in deciding the issues. However,

separate verdict forms could have helped the jury decide the issues of whether defendant was guilty of intentional, knowing, or felony murder.

As previously discussed in this opinion, had the jury found defendant guilty of felony murder premised on attempted armed robbery and not guilty of both intentional and knowing murder, defendant would not have been eligible to be sentenced to a consecutive sentence on the attempted armed robbery conviction.

Based on the aforementioned principles, we hold that when a defendant who is charged with intentional or knowing murder and felony murder requests a separate verdict form for felony murder and such a request has a basis in the evidence presented at trial, the separate verdict form must be given or consecutive sentences cannot be imposed based on the offense underlying the felony murder, pursuant to section 5-8-4(a) of the Unified Code of Corrections (730 ILCS 5/5-8-4(a) (West 2004)).

### III.  CONCLUSION

It is difficult to find fault with a learned trial judge, especially one whose apparent motive was not to confuse the jury.  However, in this case, where the decision not to give the separate verdict form may have added eight years to defendant's sentence, we find that the error necessitates a modification of defendant's sentence.  As a result of the trial court's failure to tender the requested verdict form in the instant case, we modify defendant's consecutive eight-year sentence for attempted armed robbery to run concurrently with his sentences for first-degree murder and armed robbery.  134 Ill. 2d R. 615(b)(4).

Affirmed; sentence modified.

No. 1-04-1946

QUINN, P.J., and NEVILLE, J., concur.