2023 IL App (1st) 210474-U

No. 1-21-0474

Order filed December 1, 2023

Sixth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 99 CR 1111 |
| | ) | |
| LERATIO SMITH, | ) | Honorable |
| | ) | Thomas J. Byrne, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE C.A. Walker delivered the judgment of the court.
Presiding Justice Oden Johnson and Justice Hyman concurred in the judgment.

**ORDER**

¶ 1    *Held*:  We affirm the circuit court's denial of leave to file a successive postconviction petition because defendant failed to show cause for not raising his proportionate penalties claim in an earlier collateral proceeding.

¶ 2    Defendant Leratio Smith appeals the circuit court's order denying his motion for leave to file a successive petition under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2020)). On appeal, he contends he set forth a meritorious claim that his sentence violated the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11) because

his *de facto* life sentence of 60 years in prison, imposed for offenses he committed at the age of 22, failed to reflect his youth, immaturity, and "learning disability." Smith asserts that he demonstrated cause for failing to raise that claim in previous postconviction petitions because those petitions pre-dated *Miller v. Alabama*, 567 U.S. 460 (2012), and its progeny. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4    Smith and codefendant Charles Taylor were charged by indictment with first degree murder, armed robbery, and attempted armed robbery, premised on an incident in Chicago on December 4, 1998.[1] Following a 2003 jury trial, Smith was found guilty of first degree murder, armed robbery, and attempted armed robbery. He was sentenced to concurrent prison terms of 60 years for first degree murder, 20 years for armed robbery, and 8 years for attempted armed robbery. The supreme court subsequently vacated the attempted armed robbery conviction and affirmed the first degree murder and armed robbery convictions. *People v. Smith*, 233 Ill. 2d 1 (2009).

¶ 5    The State's evidence at trial showed that on December 4, 1998, at about 11:45 p.m., outside a bar on the 3500 block of North Elston Avenue in Chicago, Smith held Tony Colon at gunpoint, brought Colon inside the bar, and ordered everyone to the floor. He told the bartender to open the cash register. Colon and Smith struggled over a cell phone and argued over whether Smith's firearm was a BB gun or a "real" firearm. Smith then shot Colon in the chest, took money from the bar, and left.

¶ 6    Smith's girlfriend, Michelle Boyd, testified that Smith told her he traveled to the bar in a vehicle with Taylor, robbed the bar, and shot someone, but "didn't mean to shoot that man." Boyd

---

[1] Smith and Taylor were tried simultaneously but in severed trials.

confirmed that she had reviewed surveillance footage from the bar and believed Smith was the gunman depicted in the footage, as she recognized his voice and clothing.

¶ 7    The day after the shooting, Smith was arrested. Multiple eyewitnesses identified Smith both in a lineup and subsequently at trial. At the police station, after a detective told him several witnesses identified him, Smith admitted that he committed the robbery and shot a man at the bar. Smith provided an inculpatory, court-reported statement, which was read into the record. In the statement, Smith stated that he and Taylor were driving around as Smith intended to rob someone. Smith wanted to "make some money" for his child's Christmas and did not plan to hurt anyone. Smith admitted to holding Colon at gunpoint, robbing the bar, and shooting Colon.

¶ 8    Smith testified that he remained in the vehicle while Taylor crossed the street, put his arm around the back of a man's neck, and entered the bar with the man. Smith heard a gunshot a minute or two later. Taylor left the bar, put a firearm into his waistband, and entered the driver's side of the vehicle. After driving away from the scene, Taylor told Smith he got in a fight at the bar and shot someone. The next day, Smith reported to police that his license plate was stolen because "they will be coming" for him if someone saw his vehicle after what had happened the previous night. When Smith went outside, the police arrested him. At the police station, officers beat Smith and held a firearm to his head until he confessed.

¶ 9    On October 23, 2003, the jury found Smith guilty of first degree murder, armed robbery, and attempted armed robbery.

¶ 10    Smith's sentencing hearing commenced on February 24, 2004, and concluded on May 26, 2004.

¶ 11    Smith's presentence investigation report (PSI) reflected that he was 22 years old at the time of the offenses and 27 years old when the report was prepared. Smith was not married and had an eight-year-old child with Boyd. He stopped attending high school his junior year because he "lost interest." No juvenile convictions were reflected in the PSI, but he was convicted of armed robbery in 2000.

¶ 12    In aggravation, the State called assistant state's attorney Nancy Nazarian, who read Smith's statement given at the police station. The State also called Colon's mother and his wife, who each read a victim impact statement in court. The State entered a certified copy of Smith's 2000 conviction for armed robbery.

¶ 13    In mitigation, Smith called his mother, who testified that Smith had issues in school, had difficulty reading, and had been enrolled in special education courses due to a learning disability. Smith was shot when he was 15 years old. His sister has severe cerebral palsy, and Smith "did it all" in helping to take care of her.

¶ 14    Richard Ybarra, the licensed clinical social worker who prepared Smith's mitigation report, testified that despite Smith's "presumed efforts," Smith's academic performance was "abysmal." Due to his consistent academic struggles, Smith underwent psychological testing early in elementary school and was diagnosed with a "severe" learning disability. The schools that Smith attended attempted to ameliorate the issue but were unsuccessful.

¶ 15    Ybarra testified that several individuals he spoke with pointed out that Smith was gullible, easy to manipulate, and easy to influence. Ybarra's "suspicion" was that Smith had difficulty processing verbal information, and that his learning disability affected his ability to make split-

second decisions. Ybarra was "absolutely convinced" that Smith's diagnosed learning disability "may have impinged on his ability to *** function."

¶ 16    On cross-examination, Ybarra confirmed that the report he completed did not describe Smith's learning disability as severe. His report stated that Smith adapts well to classroom situations and gets along well with peers and authority figures. The report also reflected that Smith had "problems" with auditory processing, visual processing, and visual memory.

¶ 17    In allocution, Smith apologized to Colon's family and stated that he made a mistake by choosing "the wrong friend," which caused him to be "here." He wished he could take "you all" back to that night, but he could not. He concluded by stating, "whatever happens today, it is my fault saying it happened."

¶ 18    The trial court sentenced Smith to 60 years in prison for first degree murder, a concurrent term of 20 years for armed robbery, and a consecutive term of 8 years for attempted armed robbery. The court stated it had reviewed the PSI, the mitigation report, and listened to the testimony of the witnesses in aggravation and mitigation. The court found the death penalty inappropriate and found natural life inappropriate because Smith only had one armed robbery in his background.

¶ 19    The court noted Smith denied committing the crime. The court stated Smith should have "let that man go" and "[a]ll he had to do was wait," but he instead "chose to drag in another player into the bar to have somebody else to take money from." Smith struggled with Colon, and someone in the bar continuously told Smith, " 'Don't shoot him.' " Nonetheless, Smith deliberately shot Colon in the chest.

¶ 20    The court found that Ybarra was "less than a credible witness." Contrary to Ybarra's testimony, the court did not think Smith had any issue spontaneously processing information.

While the court believed Smith was learning disabled, the court did not know "what that means" and "certainly" could not take Ybarra's assessment regarding "what it means." The court stated that Smith "chose to get in the car, drive around looking for prey," and did so out of "simple greed and a desire" to take something from someone else.

¶ 21    On direct appeal, we affirmed, but modified Smith's attempted armed robbery sentence to run concurrently with the other sentences. *People v. Smith*, 372 Ill. App. 3d 762 (2007). The Illinois Supreme Court vacated Smith's conviction for attempted armed robbery and affirmed his murder and armed robbery convictions. *Smith*, 233 Ill. 2d at 29.

¶ 22    On December 18, 2007, Smith filed a *pro se* postconviction petition, which the circuit court summarily dismissed. On appeal, we allowed Smith's counsel to withdraw and affirmed. *People v. Smith*, No. 1-08-3653 (2009) (unpublished summary order under Illinois Supreme Court Rule 23(c)).

¶ 23    On February 5, 2010, Smith filed a *pro se* motion for leave to file a successive postconviction petition, which the circuit court denied. Smith did not appeal that denial.

¶ 24    On January 23, 2020, Smith filed the instant *pro se* motion for leave to file a successive postconviction petition with an attached successive postconviction petition, requesting a new sentencing hearing.[2] He alleged, in relevant part, that his *de facto* life sentence of 60 years in prison for an offense he committed at 22 years old violated the eighth amendment to the United States Constitution (U.S. Const., amend. VIII) and the proportionate penalties clause of the Illinois

---

[2] On June 17, 2021, Smith filed another *pro se* motion for leave to file a successive postconviction petition, which the circuit court denied. On appeal, we allowed Smith's counsel to withdraw and affirmed. *People v. Smith*, No. 1-22-0498 (2023) (unpublished summary order under Illinois Supreme Court Rule 23(c)).

Constitution (Ill. Const. 1970, art. I, § 11) under *Miller* and its progeny. Smith referenced more recent "brain research" reflecting that the brain of young adults continues to develop into their mid-20s. He claimed other research showed "young offenders are often unable to make and act upon proper autonomous judgments," are "particularly susceptible to peer pressure," and will "commit conduct promoted by others that they would not normally commit on their own."

¶ 25     Smith also asserted that *People v. House*, 2015 IL App (1st) 110580, and its progeny extended the protections of *Miller* to "young adults," and, thus, the protections of *Miller* applied to him because he was a young adult at the time of the offense. However, the trial court failed to consider mitigating evidence regarding his youth. Smith also claimed the court failed to consider his "immaturity and state of mind, even after it was a fact that [he] has a slow learning disability." Smith further claimed his 60-year sentence shocked the moral sense of the community, as he was sent to prison for the remainder of his life with no chance to rehabilitate himself into a "useful member of society."

¶ 26     Smith asserted he had cause for not raising his sentencing claim earlier because, until *House* was decided in 2015, only a juvenile could challenge a *de facto* life sentence based on the principles of *Miller*. Smith claimed he was prejudiced because he received an unconstitutional *de facto* life sentence. Smith attached to his motion, *inter alia*, portions of transcripts of prior proceedings, including testimony addressing his learning disability, and a 2016 Newsweek Magazine article titled "Neuroscience Is Changing the Debate Over What Role Age Should Play in the Courts."

¶ 27     On January 25, 2021, the circuit court dismissed Smith's motion for leave to file a successive postconviction petition. The court found, in relevant part, that the protections of *Miller*

only applied to minors under the age of 18, but Smith was 22 years old when he committed the offenses. The court also noted that the Illinois Supreme Court had vacated the holding in *House* (see *People v. House*, No. 122134 (Ill. Nov. 28, 2018) (supervisory order)). Nonetheless, the court stated *House* did not apply to Smith because the *House* ruling, unlike here, was largely premised on the fact that the defendant was convicted under a theory of accountability and received a mandatory life sentence.

¶ 28                                    II. ANALYSIS

¶ 29     On appeal, Smith asserts that the circuit court erred in denying leave to file a successive postconviction petition because he was "an immature emerging adult with a learning disability" at the time of the offenses and received a *de facto* life sentence in violation of the proportionate penalties clause of the Illinois Constitution as applied to him. He claims that his *de facto* life sentence failed to reflect his youth, immaturity, and "learning disability."

¶ 30     The Act provides a three-stage method for persons under criminal sentence to "assert that their convictions were the result of a substantial denial of their rights under the United States Constitution or the Illinois Constitution or both." *People v. Hodges*, 234 Ill. 2d 1, 9 (2009). Generally, the Act contemplates the filing of only one postconviction petition, and section 122-3 of the Act provides that any claim of a substantial denial of constitutional rights not raised in the original or an amended petition is waived. *People v. Orange*, 195 Ill. 2d 437, 449 (2001); 725 ILCS 5/122-3 (West 2020). However, the procedural bar against successive proceedings will be relaxed on either of two grounds: (1) "where the petitioner can establish cause and prejudice for the failure to assert a postconviction claim in an earlier proceeding"; or (2) "where the petitioner

asserts a fundamental miscarriage of justice based on actual innocence." *People v. Robinson*, 2020 IL 123849, ¶ 42. Here, Smith asserts that he satisfied the cause-and-prejudice test.

¶ 31     The cause-and-prejudice test for a successive petition involves a higher standard than the first-stage frivolous and patently without merit standard. *People v. Smith*, 2014 IL 115946, ¶ 35. The defendant must establish cause "by identifying an objective factor that impeded his or her ability to raise a specific claim during his or her initial post-conviction proceedings." 725 ILCS 5/122-1(f)(1) (West 2020). The defendant establishes prejudice "by demonstrating that the claim not raised during his or her initial post-conviction proceedings so infected the trial that the resulting conviction or sentence violated due process." 725 ILCS 5/122-1(f)(2) (West 2020).

¶ 32     Both elements of the cause-and-prejudice test must be met to "overcome section 122-3's waiver provision or to establish fundamental fairness for relaxing the *res judicata* doctrine." *People v. Clark*, 2023 IL 127273, ¶ 47. The circuit court should deny leave to file a successive petition "when it is clear, from a review of the successive petition and the documentation submitted by the petitioner, that the claims alleged by the petitioner fail as a matter of law or where the successive petition with supporting documentation is insufficient to justify further proceedings." *Smith*, 2014 IL 115946, ¶ 35. We review *de novo* the denial of a motion for leave to file a successive postconviction petition. *People v. Lusby*, 2020 IL 124046, ¶ 27.

¶ 33     The eighth amendment to the United States Constitution prohibits cruel and unusual punishments. U.S. Const., amend. VIII. The proportionate penalties clause of the Illinois Constitution states that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. A sentence violates the proportionate penalties clause where " 'the punishment for the

offense is cruel, degrading, or so wholly disproportionate to the offense as to shock the moral sense of the community.' " *People v. Robinson*, 2021 IL App (1st) 192289, ¶ 46 (quoting *People v. Miller*, 202 Ill. 2d 328, 338 (2002)). The eighth amendment and the proportionate penalties clause are not synonymous. *People v. Clemons*, 2012 IL 107821, ¶¶ 36-40.

¶ 34    The United States Supreme Court in *Miller* held that the eighth amendment to the United States Constitution "forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders." *Miller*, 567 U.S. at 479.

¶ 35    The Illinois Supreme Court has extended *Miller* to apply to *de facto* life sentences imposed on juveniles, defined as prison sentences over 40 years (*People v. Buffer*, 2019 IL 122327, ¶¶ 41-42). Our supreme court has also found that *Miller* protections under the eighth amendment are not implicated in cases of a defendant aged 18 or over, as the age of 18 "marks the present line between juveniles and adults." *People v. Harris*, 2018 IL 121932, ¶¶ 54-61. For purposes of an as-applied proportionate penalties challenge, an "emerging adult" a defendant between the ages of 18 and 19 years old is not categorically foreclosed from raising such a challenge to a life sentence premised on the evolving science on juvenile maturity and brain development. *Clark*, 2023 IL 127273, ¶ 87. Whether a sentence is constitutional is a question of law, which we review *de novo*. *People v. Taylor*, 2015 IL 117267, ¶ 11.

¶ 36    Here, raising exclusively an as-applied proportionate penalties challenge to his 60-year prison sentence, Smith asserts that he was entitled to the protections set forth in *Miller* and its progeny because his brain development at 22 years old was the equivalent to that of an adolescent at the time of the offenses. He contends that he satisfied the cause prong of the cause-and-prejudice test because *Miller* and the cases adopting *Miller*'s protections were decided after he filed his

initial 2007 petition and subsequent 2010 petition. He asserts that he was prejudiced because the trial court imposed a *de facto* life sentence on him without the benefit of the "legal and scientific understanding of youthful offenders whose brains are still developing."

¶ 37 After this case was fully briefed, our supreme court decided *People v. Clark*, 2023 IL 127273, which affirmed the denial of the defendant's motion for leave to file a successive postconviction petition raising a new proportionate penalties challenge under *Miller* principles to his 90-year prison sentence for an offense he commented at age 24. *Id.* ¶¶ 85, 99. The court found that " '*Miller*'s announcement of a new substantive rule under the eighth amendment does not provide cause for a defendant to raise a claim under the proportionate penalties clause' in a successive postconviction petition." *Id.* ¶ 92 (quoting *People v. Dorsey*, 2021 IL 123010, ¶ 74).

¶ 38 The supreme court explained that, prior to *Miller*, Illinois courts "have long held that the proportionate penalties clause required the circuit court to take into account the defendant's 'youth' and 'mentality' in fashioning an appropriate sentence." *Id.* The court further explained that the defendant had the "essential legal tools" to raise his proportionate penalties claim when filing his previous postconviction petitions. (Internal quotation marks omitted.) *Id.* ¶ 93; see also *People v. Maldonado*, 240 Ill. App. 3d 470, 485-86 (1992). The court held that citing the *Miller* line of cases does not satisfy the cause prong of the cause-and-prejudice test for raising a proportionate penalties claim in a successive postconviction petition, "as *Miller*'s unavailability does nothing to explain why [the] defendant neglected to raise the proportionate penalties clause claim in his prior postconviction proceedings." *Clark*, 2023 IL 127273, ¶ 94.

¶ 39 Even more recently, our supreme court decided *People v. Moore*, 2023 IL 126461, which concerned two consolidated appeals involving defendants who were 19 years old at the time of their respective offenses and had claimed that *Miller* provided cause for raising new constitutional

challenges to their sentences in a successive postconviction petition. *Id.* ¶¶ 1, 36. The court clarified that, because *Miller* does not "directly apply to young adults," it does not provide cause for a young adult to raise a claim under either the proportionate penalties clause of the Illinois Constitution or the eighth amendment to the United States Constitution. *Id.* ¶¶ 38, 40. The court held that *Miller* did not provide cause for the defendants to file their proposed successive postconviction petitions. *Id.* ¶ 44.

¶ 40    As was the case in *Clark* and *Moore*, Smith was over 18 years old at the time he committed the offenses. In fact, he was 22 years old. Although Smith argues that the trial court should have considered his status as an "emerging adult" in sentencing him, Smith failed to raise a proportionate penalties claim in any prior collateral challenge. Both *Clark* and *Moore* specifically hold that young adults cannot establish cause for a proportionate penalties challenge under the cause-and-prejudice test based on the type of *Miller* unavailability claim Smith raises here. Thus, we are compelled to reach the same result, finding that Smith cannot demonstrate cause for purposes of the cause-and-prejudice test for leave to file a successive postconviction petition premised on a *Miller*-type proportionate penalties claim. See *People v. Vidaurri*, 2023 IL App (1st) 200857, ¶ 75 (finding that, based on *Clark*, the defendant could not establish cause for filing a successive postconviction petition raising a *Miller*-type proportionate penalties claim). Accordingly, the circuit court properly denied Smith's motion for leave to file a successive postconviction petition.

¶ 41    Based on our finding that Smith failed to show cause, we need not address the issue of whether Smith made a showing of prejudice. *Moore*, 2023 IL 126461, ¶ 42.

¶ 42                                III. CONCLUSION

¶ 43    For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 44    Affirmed.