Filed 6/24/21  P. v. Garcia CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | F080923 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. CR-18-005881) |
| MARIO GARCIA, JR., | **OPINION** |
| Defendant and Appellant. | |

## THE COURT[*]

APPEAL from a judgment of the Superior Court of Stanislaus County. Thomas D. Zeff, Judge.

Martin Baker, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Michael A. Canzoneri and Clifford E. Zall, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

[*] Before Levy, Acting P.J., Smith, J. and Snauffer, J.

Defendant Mario Garcia, Jr. pled guilty to one count of possession of methamphetamine for sale and was convicted by a jury of four counts of felony child endangerment against his four children. The trial court sentenced him to concurrent terms of six years for each child endangerment count, plus a consecutive term of eight months for the possession for sale count. He contends the trial court erred in failing to stay the eight-month sentence under Penal Code section 654.[1]

We affirm.

## STATEMENT OF THE CASE

An information charged Garcia with one felony count of possession of methamphetamine for sale (Health & Saf. Code, § 11378; count 1) and four felony counts of child endangerment (§ 273a, subd. (a); counts 2—5). All the offenses were alleged to have been committed on the same date. The information further alleged Garcia had served two prior prison terms within the meaning of section 667.5, subdivision (b).

Garcia pled guilty to count 1 before trial, and the prosecution dismissed both section 667.5, subdivision (b), allegations. The case proceeded to trial on counts 2 through 5, and the jury convicted Garcia on all four of those counts.

The trial court sentenced Garcia to the upper term of six years state prison on count 2 (the first of the four counts of child endangerment in violation of section 273a, subdivision (a)), and to the same term for counts 3 through 5, with each term to be served concurrently. As to count one, the court found section 654 did not apply and sentenced Garcia to eight months (one-third of the midterm) to be served consecutively.

## STATEMENT OF FACTS

Shortly after midnight on August 28, 2018, Stanislaus County Sheriff's Deputy Caleb Murphy contacted Garcia on the street about two houses away from Garcia's

---

[1] Undesignated statutory references are to the Penal Code.

Salida residence. Garcia was carrying a baseball bat and said he was walking to his mother's house "across town."

After Garcia informed Deputy Murphy his four children were asleep in his house with no other adult present, Deputy Murphy and other deputies entered Garcia's house. Garcia also informed the deputies there was methamphetamine in the house.

Deputies found a substantial amount of methamphetamine in a state of preparation for sale on the kitchen counter. There were fourteen different packages of methamphetamine ranging in weight from two ounces to roughly one pound, and there was loose methamphetamine on the counter and on a scale. Garcia's four children were sleeping approximately 25 feet away from the kitchen counter with their bedroom door open.

Garcia's children were four, seven, eight, and eleven years old. Garcia's mother-in-law described Garcia's four-year-old son as a curious boy who "usually acts on pretty much anything he wants to know about" and liked to climb on things. The mother-in-law had had all the children stay overnight at her house on several occasions and had known each of them to wake up in the middle of the night and go to other areas of the house without supervision. All the children were tall enough to reach beyond the 36-inch-high countertop in Garcia's kitchen.

Detective Christopher Gallo described the drug sales operation at Garcia's house as one where Garcia had recently "re-upped," meaning Garcia had acquired a larger amount of methamphetamine to be broken down into smaller amounts for sale to individual users or lower-level dealers. Such an operation presents a risk of drug-related home-invasion robberies or "rips" and a risk of inhalation of dust produced by shards of methamphetamine rubbing together.

Doctor Lyn Raible, a former chief medical officer for a narcotic treatment program, testified a curious child who encountered methamphetamine would be at risk of

3.

ingestion from inhalation of airborne particles, from dermal absorption, and from secondary contact with the mouth.

## DISCUSSION

At sentencing, defense counsel argued section 654 should apply to count 1. Counsel stated, "I do believe … that Count I, which is a separate offense and a separate statute, is based on the same act as Count II through V, and Penal Code §654 would apply to that count." The court disagreed, explaining, "On the question of whether Count I—the punishment for Count I for violating Health and Safety Code §11378 should be stayed per §654, the Court concluded that it does not because the defendant's offenses were not incident to one objective and the defendant harbored multiple objectives in violating multiple statutory provisions." The Court added, "It is the Court's view that the evidence in this trial supports the finding that the defendant had at least two different objectives and therefore §654 does not apply insofar as to the convictions for the 11378 and the 273a(a) counts."

Garcia contends the trial court erred in finding section 654 did not apply, but we reject this contention because substantial evidence supported the court's findings.

### A. Applicable law

#### 1. Section 654 and standard of review

Section 654 provides, in relevant part, "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." (§ 654, subd. (a).) The statute "expressly prohibits separate punishment for two crimes based on the same act, but has been interpreted to also preclude multiple punishment for two or more crimes occurring within the same course of conduct pursuant to a single intent." (*People v. Vargas* (2014) 59 Cal.4th 635, 642; accord, *People v. Harrison* (1989) 48 Cal.3d 321, 335.) Determining "[w]hether a defendant may be subjected to multiple punishment under

4.

section 654 requires a two-step inquiry ....'" (*People v. Corpening* (2016) 2 Cal.5th 307, 311.) "We first consider if the different crimes were completed by a 'single physical act.' [Citation.] If so, the defendant may not be punished more than once for that act. Only if we conclude that the case involves more than a single act—i.e., a course of conduct—do we then consider whether that course of conduct reflects a single 'intent and objective' or multiple intents and objectives." (*Ibid.*) "If all of the offenses are incident to one objective, the court may punish the defendant for any one of the offenses, but not more than one. [Citation.] If, however, the defendant had multiple or simultaneous objectives, independent of and not merely incidental to each other, the defendant may be punished for each violation committed in pursuit of each objective even though the violations share common acts or were parts of an otherwise indivisible course of conduct." (*People v. Cleveland* (2001) 87 Cal.App.4th 263, 267—268 (*Cleveland*).)

"The question whether section 654 is factually applicable to a given series of offenses is for the trial court, and the law gives the trial court broad latitude in making this determination. Its findings on this question must be upheld on appeal if there is any substantial evidence to support them." (*People v. Hutchins* (2001) 90 Cal.App.4th 1308, 1312.) Under substantial evidence review, we review the evidence in the light most favorable to the judgment and presume the existence of every fact that could reasonably be deduced from the evidence. (*Cleveland, supra,* 87 Cal.App.4th at p. 271.) We "affirm the trial court's ruling, if it is supported by substantial evidence, on any valid ground." (*People v. Capistrano* (2014) 59 Cal.4th 830, 886, fn. 14, overruled in part on another ground in *People v. Hardy* (2018) 5 Cal.5th 56, 103—104; accord, *People v. Brents* (2012) 53 Cal.4th 599, 618.)

## 2. *Section 273a, subdivision (a)*

Section 273a, subdivision (a), provides in part: "Any person who, under circumstances or conditions likely to produce great bodily harm or death, ... having the care or custody of any child, willfully causes or permits the person or health of that ...

child to be placed in a situation where his ... person or health is endangered, shall be punished by imprisonment ...."

Cases like Garcia's that involve indirect abuse require a showing of criminal negligence. (*People v. Toney* (1999) 76 Cal.App.4th 618, 622.) "[C]riminal negligence involves ' "a higher degree of negligence than is required to establish negligent default on a mere civil issue. The negligence must be aggravated, culpable, gross, or reckless, that is, the conduct of the accused must be such a departure from what would be the conduct of an ordinarily prudent or careful [person] under the same circumstances as to be incompatible with a proper regard for human life ... or an indifference to consequences." ' " (*People v. Valdez* (2002) 27 Cal.4th 778, 788.) Under this standard, " 'knowledge of the risk is determined by an objective test[,]' " i.e., " ' "if a reasonable person in the defendant's position would have been aware of the risk involved, then the defendant is presumed to have had such awareness." ' " (*Id.* at p. 783.)

**B.  Analysis**

We conclude substantial evidence supported a finding that the child endangerment counts involved acts separate from those underlying the possession for sale count, as well as a finding that the endangerment offenses and the possession for sale offense were not merely incidental to one objective.

Garcia argues "the manner in which [he] possessed and prepared methamphetamine" was the act that endangered his children. That is to say, the child endangerment counts and the possession for sale count involved the same act. It is true Garcia's act of possessing methamphetamine formed part of the factual basis for all the charged counts. However, substantial evidence supported a finding the endangerment counts involved additional acts that did not underlie the possession for sale count. These additional acts were that Garcia left his children at home unattended with a large amount of methamphetamine on the kitchen countertop. Thus, while there was some overlap in

6.

the factual bases of the two categories of charged offenses, the bases were not coextensive.

We next consider whether the child endangerment offenses (which all shared the same factual basis) were merely incidental to the possession for sale offense. We conclude they were not. Garcia's intent in possessing methamphetamine for sale was to sell drugs. Substantial evidence supported a finding the acts underlying the child endangerment counts were not incidental to accomplishing this objective, but instead were committed for the independent objective of leaving his house to visit his mother. While leaving home to visit one's mother does not involve an objective that is inherently criminal, the objective becomes criminal when one leaves their children home attended with a fulsome amount of methamphetamine in the kitchen and disregards the inherent risk to the children's health. The objective underlying the child endangerment counts here is not merely incidental to the objective of selling methamphetamine; the two categories of counts involved separate objectives.

Imposing count 1 to run consecutively to the other counts did not violate the provisions of section 654.

## DISPOSITION

The judgment is affirmed.